[No. 42577-3-I.    Division One.    April 24, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY J. NITSCH, JR., *Appellant*.

513

*Wayne Clark Fricke* and *Lance M. Hester* of *Law Offices of Monte E. Hester, P.S.*, for appellant.

*Norm Maleng, Prosecuting Attorney, Lee Davis Yates, Senior Deputy,* and *Catherine D. Shaffer, Deputy,* for respondent.

ELLINGTON, J. — After a violent assault on his former girl friend, Anthony Nitsch pleaded guilty to first degree burglary and first degree assault. The parties agreed to the

calculation of the standard range, and the court sentenced Nitsch to the high end of the standard range on both counts, to run concurrently. The court also imposed two firearm enhancements, to run consecutive to each other. For the first time on appeal, Nitsch argues his offender score was erroneously calculated because the court failed to determine whether the burglary and assault constituted the same criminal conduct. We hold Nitsch waived review of this issue when he agreed to the calculation of the standard range. And even if Nitsch had preserved the same criminal conduct issue for review, we find no error. We remand for resentencing as to the firearm enhancements, however, because as the State correctly concedes, the enhancements cannot be imposed to run consecutively.

## FACTS

The following is a summary of the Certification for Determination of Probable Cause and the State's argument at sentencing. Nitsch's denials are noted.

Anthony Nitsch and Elizabeth Reed dated in August and September 1996. Reed became uncomfortable with Nitsch's apparent alcohol problem and stopped taking his telephone calls. In October 1996, Nitsch angrily told Reed that he wanted to end the relationship. Reed agreed. Nitsch mentioned a prior girl friend who had similarly not wanted to talk to him, and that he had broken into her home. After that conversation, Nitsch returned by mail a gift Reed had given to him, in a package addressed to "Ms. Reed." Reed never used that title and no one addressed her as "Ms. Reed." Included in the package was an angry, abusive letter.

On January 19, 1997, when Reed arrived home, her house was very cold. She discovered that a fuse to her heat pump had been disconnected. Near the pump, Reed noticed human feces. Suddenly, a person of Nitsch's height and weight stood up from behind a nearby bush. The person threw beer at her, then fled. The police found a roll of toilet

paper, a bag of Fritos, and a bottle of beer where the incident occurred. Nitsch denies that he committed this offense.

Based on police advice, Reed installed an alarm system in her house, obtained a 9-mm handgun, and changed her locks.

Harassment of Reed continued. She received numerous hang-up calls. When she changed her number, the calls stopped. She received two more packages in the mail addressed to "Ms. Reed." One package contained a sexual device and the other contained a dead skunk. Nitsch's co-worker recalls Nitsch talking about how one should "send a dead skunk in the mail to a woman who does this to you." Nitsch denies he "mailed the package with the animal in it."

Reed found beer bottles, empty packages of Fritos, and golf tees in her yard. She rarely drinks, does not consume Fritos, and does not play golf, although Nitsch does. On occasion she found signs that her house had been entered.

On March 31, 1997, Nitsch purchased a .40-caliber handgun.

On April 21, 1997, at about 2:00 A.M. Reed was at home in bed. She heard someone outside her bathroom window. She grabbed her gun, and shouted that she was armed and would shoot. She heard Nitsch's laugh and the sound of his departure. The police found pry marks on her bathroom and garage windows. Nitsch denies he committed this offense.

At about 8 P.M. on June 2, 1997, Reed received a telephone call from her alarm company. She went home and found her front door and a rear window ajar.

When she came home later that evening, she had her gun with her. The front porch light was out, although she had changed the bulb the day before. On the "Welcome" mat outside her door was human feces. Nitsch later confirmed to the presentence investigator that he left the deposit.

At that point, Nitsch crashed through a window into Reed's house. He was carrying his .40-caliber handgun. It is unclear who fired first. Reed fired repeatedly at Nitsch, emptying her gun. Nitsch fired once.

Reed began walking backwards, tripped, and fell. Nitsch came after her. He yelled, "Do you remember me, bitch? I am going to kill you, bitch!" Then he hit her with something metallic and broke her nose. Reed believed Nitsch was going to murder her. She kicked at him, knocking him into her closet doors. Nitsch began groping for something on the floor. Reed fled past him to her front door. She believes she heard the sound of gunfire. As she ran across the street, she fell and cut her knee. She told her neighbors what had happened and they called 911.

Nitsch pursued Reed outside. A neighbor saw him kneeling in her driveway. Nitsch then went back inside Reed's house where he knocked over her computer, kicked in the door of a spare bedroom, and kicked in her pet door. He sat down on her couch, put his feet up on the coffee table, and put his gun between his feet.

Nitsch refused to surrender, and police were forced to storm the house. They apprehended Nitsch on Reed's couch. They seized his gun, which had five rounds in it. Nitsch had gunshot wounds in his arms, ankle, knee, and chest. Nitsch admitted he entered Reed's home with a gun. He explained that he "was armed because she was armed." He stated that she fired first, shooting him several times. He admitted to firing once.

The police recovered Reed's gun in the driveway. They noticed apparent blood splatters near the gun and on the walkway leading to the front door. Nitsch's gun had blood and hair on it. Police found numerous 9-mm casings and one .40-caliber casing in the entryway.

A car registered to Nitsch's parents was parked across the street and to the east of Reed's house. Inside the car, police found a large dress, a wig, and something "that would make the dress look a lot more feminine if a man wore it under the dress." There also was beer and "equip-

ment" in the car. Outside Reed's house, police found a hat. Police also discovered that the telephone line to Reed's home had been disconnected and her porch light had been unscrewed.

The morning after the incident, Reed's next-door neighbor found a black bag on his property. The bag contained a six-pack of beer with a receipt dated June 2, 1997 at about 9:00 P.M., a single can of beer, a bottle containing sugar, lipstick, binoculars, a .40-caliber bullet, a fully-loaded clip of .40-caliber ammunition, a pair of latex surgical gloves, a roll of packing tape, and a knife with a seven-inch blade. Next to the bag was a roll of toilet paper. Nitsch told the presentence investigator that the packing tape was to tie up Reed if necessary.

Procedural History

Nitsch entered an *Alford*[1] plea of guilty to first degree burglary and first degree assault.[2] Both charges included a firearm allegation. At sentencing, both parties represented to the court that Nitsch's standard range was 111-147 months on Count I and 26-34 months on Count II. The State requested the high end of the standard range, 267 months for assault and 154 months for burglary (which includes a 120-month firearm enhancement on each count),

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Nitsch's plea stated:

I maintain my innocence to the extent that I did not enter Reed's home with the intent to harm her, but rather to set up a situation where I would be killed. I also deny that I committed the offenses described in the Certification for Determination of Probable Cause on 1-19-97 and 4-21-97, and deny that I mailed the package with the animal in it. Despite these denials, however, I wish to enter pleas of guilty to Counts I and II. I have reviewed all of the evidence with my lawyer, and believe that there is a substantial likelihood that I'd be found guilty if I proceeded to trial. I wish to plead guilty to spare Ms. Reed the additional anguish a trial would bring upon her, and to take advantage of the prosecutor's agreement to not file those additional charges mentioned in the Certification and proposed omnibus application.

I agree that the Judge may review the Certification for purposes of determining whether there is a factual basis for accepting my guilty plea, and for determining my sentence.

to run concurrently. The standard range was based on an offender score of two, arrived at by counting each offense as an "other current offense." Because each counts two points, the score for each offense is two.[3] The defense requested an exceptional sentence downward of 28 months for the assault and 28 months for the burglary, to run concurrently, based upon Nitsch's allegedly impaired capacity to appreciate the wrongfulness of his conduct.

In rejecting Nitsch's request and sentencing him to the high end of the range, the trial court stated, "In this case there is substantial evidence that [the crimes] were committed with some careful planning and were not spontaneous. There is also substantial evidence of injury and damage, both physical and psychological[,] over some period of time that the victim suffered." The court sentenced Nitsch to 147 months for assault and 34 months for burglary, to run concurrently, plus consecutive 120-month firearm enhancements.

This court issued an unpublished opinion in this matter on March 29, 1999. Following the Supreme Court's decisions in *State v. Ford*[4] and *State v. Sweet*[5] that opinion was withdrawn, and we asked the parties for additional briefing and set the matter for oral argument.

## DISCUSSION

### Challenge to Offender Score Calculation

Nitsch argues his offender score was miscalculated because his two crimes encompassed the same criminal conduct and should have counted as one crime under RCW 9.94A.400(1)(a), giving him an offender score of zero and a standard range of 93-123 months on the assault and 15-20

---

[3]*See* RCW 9.94A.360(8).

[4]*State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999)

[5]*State v. Sweet*, 138 Wn.2d 466, 980 P.2d 1223 (1999).

months on the burglary.[6] The State responds that because Nitsch not only failed to raise this issue below but affirmatively agreed to the standard range on both counts based on an offender score of two, he is not entitled to raise this issue for the first time in this court. We agree with the State.

■■ Generally, issues not raised in the trial court may not be raised for the first time on appeal.[7] This rule is not an absolute bar to review.[8] In the context of sentencing, the general rule is that "[a] sentence within the standard range for the offense shall not be appealed."[9] Illegal or erroneous sentences, however, may be challenged for the first time on appeal.[10]

The Washington Supreme Court recently considered whether a challenge to the classification of out-of-state convictions for sentencing purposes could be raised for the first time on appeal.[11] Under the Sentencing Reform Act of 1981, "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law."[12] Such a comparison requires that the record reflect the nature and type of out-of-state conviction the State seeks to include in the offender score.[13] In *Ford*, the State introduced no evidence to support the classification of Ford's California convictions. The court held that not only did the State fail to meet its burden of proof under the sentencing statute, but that the complete absence of any evidence supporting classification "falls below even the minimum requirements of due pro-

---

[6]*See* RCW 9.94A.310.

[7]*See* RAP 2.5(a); *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996).

[8]*Ford*, 137 Wn.2d at 477.

[9]RCW 9.94A.210(1); *see also State v. Mail*, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993).

[10]*Ford*, 137 Wn.2d at 477 (citing numerous cases).

[11]*Ford*, 137 Wn.2d at 472.

[12]RCW 9.94A.360(3).

[13]*See State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998).

cess," and that "fundamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record."[14] The court squarely held that Ford's failure to object did not "relieve the State of its evidentiary obligations."[15]

The court also rejected the State's argument that Ford's silence constituted "acknowledgment" of the classifications by the defense. But the court noted that under the Sentencing Reform Act of 1981, "acknowledgment allows the judge to rely on unchallenged facts and information introduced for the purposes of sentencing."[16] Thus, the court characterized as "acknowledged" and therefore appropriately included, "out-of-state convictions included in the defense's proffered offender score calculation."[17]

In a companion case to *Ford*, *State v. McCorkle*, the court again held that the trial court's failure to calculate the standard range based on correct classification of prior convictions was "legal error subject to review."[18]

Nitsch, however, makes a different argument. He does not challenge the evidentiary sufficiency of the record nor the correct calculation of prior convictions. Rather, he argues that the court should have, sua sponte, found his two crimes to be the same criminal conduct.

This is not an allegation of pure calculation error, as in *Ford* and *McCorkle*. Nor is it a case of mutual mistake regarding the calculation mathematics.[19] Rather, it is a failure to identify a factual dispute for the court's resolution and a failure to request an exercise of the court's discretion. A defendant's current offenses must be counted

---

[14]*Ford*, 137 Wn.2d at 481.

[15]*Ford*, 137 Wn.2d at 482.

[16]*Ford*, 137 Wn.2d at 482-83; RCW 9.94A.370(2).

[17]*Ford*, 137 Wn.2d at 483 n.5.

[18]*State v. McCorkle*, 137 Wn.2d 490, 496, 973 P.2d 461 (1999).

[19]*See e.g., State v. Skiggn*, 58 Wn. App. 831, 838, 795 P.2d 169 (1990).

separately in calculating the offender score unless the trial court enters a finding that they "encompass the same criminal conduct."[20] Offenses encompass the same criminal conduct when they are committed against the same victim, in the same time and place, and involve the same objective criminal intent.[21] The trial court's determination on the issue is reviewed for abuse of discretion.[22]

No Supreme Court case has addressed whether the same criminal conduct issue may be raised for the first time on appeal. Two divisions of this court, however, have recently permitted review where the defendant did not ask the trial court to consider whether his crimes constituted the same criminal conduct.[23] In *State v. Anderson*, the court stated: "[A] party may challenge a sentence for the first time on appeal on the basis that it is contrary to law. This rule tends to bring sentences into conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand only because counsel did not object in the trial court."[24] This is precisely the reason review was permitted in *Ford*.[25]

We first note that *Anderson* is distinguishable because unlike Nitsch, Anderson did not make an affirmative acknowledgement of his standard range. As the *Ford* court noted, the Sentencing Reform Act of 1981 permits the sentencing court to rely on unchallenged facts and information.[26] The State argues that Nitsch waived any argument that his crimes count as the same criminal conduct under RCW 9.94A.400(1)(a) because he explicitly agreed, in

[20]RCW 9.94A.400(1)(a).

[21]RCW 9.94A.400(1)(a).

[22]*State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994).

[23]*See State v. Anderson*, 92 Wn. App. 54, 960 P.2d 975 (1998), *review denied*, 137 Wn.2d 1016 (1999); *see also State v. Rowland*, 97 Wn. App. 301, 983 P.2d 696 (1999).

[24]*Anderson*, 92 Wn. App. at 61 (citation omitted).

[25]*See Ford*, 137 Wn.2d at 477-78.

[26]*Ford*, 137 Wn.2d at 482; RCW 9.94A.370(2).

writing, that his offender score was properly calculated. According to the State, this affirmative assertion places Nitsch squarely within the *Ford* reasoning that a sentencing court may rely upon information acknowledged by the defendant in his offender score calculation.

We agree with the State. Nitsch did not merely remain silent, as did the defendants in *Ford* and *Anderson*. Rather, Nitsch filed a presentence report wherein he affirmatively alleged his standard range to be 111-147 months on the assault and 26-34 months on the burglary—the correct standard range only if the offender score is two. While he did not state "my offender score is two," his range can be arrived at only by calculating the score, and thus his explicit statement of the range is inescapably an implicit assertion of his score, and also an implicit assertion that his crimes did not constitute the same criminal conduct. In the context of a complex plea agreement involving the State's promise not to file additional charges and Nitsch's request for an exceptional mitigated sentence, Nitsch's assertion of a standard range identical to that calculated by the State is particularly compelling.

The other Court of Appeals decision reviewing a first-time challenge to applicability of the same criminal conduct statute is also distinguishable. In the recent decision of Division Three in *State v. Rowland*, the court's decision was premised in part on the fact that the court was not asked to address the effect, if any, of the parties' agreements about the offender score. On remand, the court specifically permitted the trial court to consider "what bearing, if any, the agreements may have relating to remedies at resentencing."[27] Further, the State conceded on appeal that the offenses constituted the same criminal conduct.[28] Here, by contrast, we have no such concession, and the State vigorously asserts that the waiver doctrine should apply because of the parties' agreement, a proposition with which we concur.

[27]*State v. Rowland*, 97 Wn. App. 301, 305, 983 P.2d 696 (1999).

[28]*Rowland*, 97 Wn. App. at 304.

While the only cases permitting review of this issue for the first time on appeal are distinguishable, we have grave reservations about permitting review in this context. Only an illegal or erroneous sentence is reviewable for the first time on appeal.[29] Application of the same criminal conduct statute involves both factual determinations and the exercise of discretion. It is not merely a calculation problem, or a question of whether the record contains sufficient evidence to support the inclusion of out-of-state convictions in the offender score. We therefore see a fundamental difference between this case and *Ford* and *McCorkle*. Unlike the out-of-state conviction provision, the same criminal conduct statute is not mandatory, and sound reasons exist for the implicit grant of discretion contained in the legislative language ("if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime"[30]).

It is entirely conceivable that in some cases—especially in the context of plea agreements—it may not be to the defendant's advantage to raise the same criminal conduct issue. The defendant may wish to make an argument for a mitigated sentence which is factually inconsistent with the requirements of the same criminal conduct statute, for example, or the combined effects of other applicable provisions may work to his detriment.

Both of these possibilities are present here. Had Nitsch advanced the same criminal conduct argument below, he would have faced the possible effects of the burglary anti-merger statute and the consequent possibility of consecutive firearm enhancements. RCW 9A.52.050 prevents merger of convictions for first-degree assault and first-degree burglary. While this statute does not factor in the calculation of an offender score, it would permit, in the court's discretion, the imposition of consecutive sentences.

[29]*See Ford*, 137 Wn.2d at 477.

[30]RCW 9.94A.400(1)(a).

The Washington Supreme Court recently held that under the antimerger statute, "the offenses of first-degree assault and first-degree burglary may be separately charged and separately punished upon conviction for both."[31] Further, when consecutive sentences are ordered, consecutive firearm enhancements are also appropriate.[32] Thus, Nitsch may have preferred to take his chances with a mitigation request rather than confront other sentencing issues not raised by the State.

In fact, the circumstances here present a textbook example of the problems flowing from review of this issue without benefit of a trial court's consideration. First, the argument Nitsch makes on appeal (that the offenses were the same criminal conduct because his objective intent in each was the same) is inconsistent with the argument he made in urging a mitigated sentence below (that his enterprise was suicidal and his subjective intent was to harm himself, not the victim).[33] (Nitsch made the same claim in his *Alford* plea statement.) If a defendant can wait to raise the same criminal conduct issue on appeal, he can try one argument with the trial court while reserving the other and, if the first is unsuccessful, he can ask the appellate court to remand for consideration of the second (factually inconsistent) argument. Lapses of memory or changes in prosecutorial or judicial personnel may then work to his advantage, and, in any event, finality is postponed. From the point of view of a defendant with nothing to lose, this is a windfall. And while a defendant's objective and subjective intent may be different, this is not an inquiry for an appellate court in the first instance.

Second, the effect of permitting review for the first time on appeal is to require sentencing courts to search the record to ensure the absence of an issue not raised. In the same criminal conduct context, such a search requires not

---

[31]*State v. Sweet*, 138 Wn.2d 466, 479, 980 P.2d 1223 (1999).

[32]*See In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998).

[33]*See State v. Davis*, 90 Wn. App. 776, 954 P.2d 325, 328 (1998).

just a review of the evidence to support the State's calculation, or a review to ensure application of the correct legal rules, but an examination of the underlying factual context in every sentencing involving multiple crimes committed at the same time. Because this is not the legislature's directive, the trial court's failure to conduct such a review sua sponte cannot result in a sentence that is illegal. The trial court thus should not be required, without invitation, to identify the presence or absence of the issue and rule thereon.

Finally, if we were to apply *Anderson* and *Rowland*, and were to find no waiver, we would still have no reason to reverse. In *Anderson*, this court treated the trial court's calculation of the offender score as an implicit determination that Anderson's offenses did not constitute same criminal conduct. The court reviewed the determination for abuse of discretion, and found the evidence supported a finding that Anderson's objective criminal intent changed. Because absence of one of the three elements prevents a finding of same criminal conduct, the court refused to disturb the implicit determination of the trial court to that effect.[34]

Similarly here, reviewing the trial court's offender score calculation as an implicit rejection of Nitsch's same criminal conduct argument, we find that the record amply supports such a rejection. The only issue is whether Nitsch's objective intent changed from one offense to the other. His intent for the assault was necessarily to harm Reed, so the question is whether his intent for the burglary was different—that is, what crime(s) he intended to commit when entering or remaining in Reed's home. On appeal, Nitsch claims his intent was necessarily the same for both crimes—to harm Reed. But the record contains Nitsch's statement at the time of his plea, together with other evidence presented at sentencing, to the effect that his true intent was not to harm the victim, but rather to harm

---

[34]*Anderson*, 92 Wn. App. at 62 (citing *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

himself. The record also contains evidence that Nitsch's intent in committing the burglary was to damage property (he did in fact deliberately cause extensive damage) or to kidnap the victim (as evidenced by the items he took to Reed's house, and his plan to use tape to tie her up if necessary). The record thus supports the implicit finding that Nitsch's objective intent for the burglary was not the same as his intent for the assault, and the implicit conclusion that the two crimes therefore did not encompass the same criminal conduct.

Consecutive Firearm Enhancements

Nitsch argues the trial court erred in ordering the two firearm enhancements to run consecutively to each other. The State concedes error in light of *In re Post Sentencing Review of Charles*.[35] We accept the State's concession and remand for resentencing according to RCW 9.94A.400.

CONCLUSION

Affirmed in part, reversed in part, remanded.

GROSSE and BAKER, JJ., concur.

Review denied at 141 Wn.2d 1030 (2000).

---

[35]*In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998).