FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 PM 12: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41439-2-II |
| Respondent, | |
| v. | |
| DEONDRE LAMAR POSEY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Deondre Lamar Posey appeals his jury conviction and sentence for attempted first degree murder and first degree unlawful firearm possession, after shooting fellow gang member Martin Newson-Jones. The trial court admitted evidence of Posey's gang affiliation with the Hilltop Crips, ruling that gang evidence was relevant to prove motive and premeditation and that its probative value outweighed its prejudicial effect. We hold that any error in admitting gang evidence was harmless, so we affirm. We also hold that the trial court erred in failing to exercise its sentencing discretion in considering prior convictions, and we remand for resentencing.

## FACTS

In early September 2009, Newson-Jones and Anthony Smith had a fight. Roughly two days later, they resolved their issues. On September 9, Newson-Jones and Liam Hines happened

upon Smith, Christopher Simms, and Steven Lovelace in the Hilltop area of Tacoma, and the parties interacted without incident. Newson-Jones and Hines went on their way, and soon thereafter, Posey and "Jaba" approached Smith, Simms, and Lovelace. Posey told Smith that a few days earlier, Newson-Jones had told Posey that Smith's brother and Simms had tried to rob Newson-Jones's house, and that "[Smith] was a cornball and all that other type of stuff." 5 Verbatim Transcript of Proceedings (VTP) (PM) at 601. Smith felt disrespected that Newson-Jones had spoken negatively about him, as he believed the two had worked through their earlier problems. Smith suggested that they all go to Newson-Jones's nearby house to sort through why Newson-Jones spoke negatively about Smith, stating, "We can go ahead we can fight." 5 VTP (PM) at 602.

Smith, Simms, Lovelace, Posey, and Jaba went to find Newson-Jones; they found him with Hines and Corey Jaggers. Smith confronted Newson-Jones and asked why he was calling him a cornball and why Newson-Jones accused Smith's brother and Simms of trying to rob his house. Smith felt that Newson-Jones's comments to Posey contravened the earlier agreement resolving the prior dispute between Smith and Newson-Jones.

Newson-Jones denied talking about Smith and expressed that he did not know what Smith was talking about. Newson-Jones said that Posey "was just trying to get stuff start[ed]." 5 VTP (PM) at 606. At that point, Posey pulled a gun out from his coat and aimed it at Newson-Jones's head. Hines intervened, grabbing Posey's arm and wrestling over the gun to diffuse the situation; but, Posey eventually overpowered Hines and shot Newson-Jones.[1]

---

[1] Evidence conflicts regarding how many shots Posey fired at Newson-Jones. Smith claims Posey fired a single shot. Neighbor Douglas Hoang heard two shots. Crime scene investigators recovered one shell casing from the scene.

Posey then fled the scene. Newson-Jones survived, but a bullet reached his spine, confining him to a wheelchair.

The State charged Posey with attempted premeditated first degree murder[2] and first degree unlawful firearm possession.[3] The attempted murder charge included an enhancement for committing the act while armed with a firearm.[4] Both counts included an aggravator for committing the crime to obtain or maintain his membership or advance his position in his gang's hierarchy.[5]

Before trial, Posey moved to exclude the admission of gang-related evidence.[6] Posey argued that the gang evidence constituted prejudicial propensity evidence. Posey theorized that the shooting stemmed from an attempted burglary, perpetrated by Smith and his brother at Newson-Jones's house; after the burglary, Smith and Newson-Jones resolved things, but Posey rekindled Smith's issues with Newson-Jones by telling Smith that Newson-Jones called him a cornball. Then, when Newson-Jones denied making those comments about Smith, Posey took offense because Newson-Jones implied that Posey lied. According to Posey, this incident had nothing to do with gangs, so he sought a preliminary hearing to hear from witnesses and demonstrate that gang evidence would be irrelevant.

---

[2] RCW 9A.32.030(1)(a).

[3] RCW 9.41.040(1)(a).

[4] RCW 9.94A.533.

[5] RCW 9.94A.535(3)(s).

[6] According to Tacoma Police Detective John Ringer, Smith, Posey, Newson-Jones, Simms, and Lovelace were all affiliated with the Hilltop Crips.

3

The State responded in an offer of proof that in gang settings, "minimal things," including disrespecting a gang member, can lead to extreme violence. 2 Verbtaim Report of Proceedings (VRP) at 43. The State explained in part, "[W]e've got the [c]ornball issue that has to be explained. That's the motive. Did you call me a [c]ornball? No. Did you call me a liar? It centers around this [c]ornball issue that has to be explained." 2 VRP at 53. "The pivotal issue is the [c]ornball statement. That's the pivotal issue." 2 VRP at 77.

The State added that, under res gestae, the jury would understand Posey's intent to shoot Newson-Jones only through a gang dynamic. It summed up its offer of proof: "Now take it to the gang level, and you've got something inoquous [sic], basically, like [c]ornball, what does that even mean; but it is something that in that world can get you killed, and very nearly did get Mr. [Newson-]Jones killed." 2 VRP at 54.

After hearing the State's offer of proof, the trial court admitted the gang evidence under ER 404(b) stating:

> I do believe as I understand it, I am persuaded by [the State's] argument, particularly the argument focusing on the word [cornball], and the difference between a word like [c]ornball, which is an inoquous [sic] word in my opinion, and the idea that someone would be upset to the point that they would shoot someone else even if they were called basically the inference was or the implication was that they were lying.
>     So I do believe it is necessary in order to prove the elements of the crime of attempted murder in this case.

2 VRP at 103-04. The trial court added, "[T]here has to be testimony with respect to that, and the jury needs to be able to understand that. And I don't see how you understand that unless you understand it in that context." 2 VRP at 104. "[T]he evidence needs to be limited to getting us to dealing with the issue of motive and premeditation." 2 VRP at 106. And after the State

4

requested that the trial court find that the probative value outweighed the prejudicial effect, the trial court stated, "I think that the probative value—I didn't say that—but outweighs the prejudicial impact to the defendant." 2 VRP at 106.

The parties then discussed how the State would introduce the gang evidence. The State explained that it would call Tacoma Police Detective John Ringer to testify as a gang expert:

> He's an expert with knowledge that [c]ornball is a derogatory term. He's an expert on the effect that has on individuals. He's an expert on the issue of in the group setting as in this case the disrespect that that implies that causes; that's the whole reason, the motive for the crime. It centers on that term.

2 VRP at 109.

At trial, the parties questioned various witnesses, including Newson-Jones, Jaggers, and Smith, as well as Detective Ringer, and none of them confirmed the State's claim that "cornball" had a particularly derogatory meaning in a gang context. Smith testified that his argument with Newson-Jones, and Posey's shooting Newson-Jones, had nothing to do with their gang affiliation. Detective Ringer testified to the importance of respect in gang culture, and how slightly disrespectful acts can quickly lead to violence, even in intra-gang conflicts. He also testified that gang members climb the gang hierarchy by committing violent acts, including shootings. During trial, Posey did not object to the gang-related evidence.

The jury convicted Posey on both the attempted first degree murder and first degree unlawful firearm possession charges. The jury also found by special verdict that Posey committed the attempted first degree murder while armed. The jury did not, however, find that Posey committed these crimes to obtain or maintain his membership or advance his position in the hierarchy of the Hilltop Crips.

At sentencing, Posey moved for a continuance so that he could research whether his three prior convictions for a 2006 drive-by shooting should be calculated as separate offenses or same criminal conduct in determining his offender score. At sentencing on the 2006 drive-by shooting, the trial court had left unchecked the box on the judgment and sentence form indicating a finding of same criminal conduct.

The State challenged Posey's motion, arguing that despite Posey's assertion that the 2006 crimes had occurred on the same day with the same victim, the trial court could not "go back in time and recreate" the sentencing hearing and decide whether those crimes constituted the same criminal conduct. 7 VRP at 4. Ultimately, the trial court denied Posey's motion, noting, "Some other Court would have to decide they made a mistake. Whether it's today or November 24th or next March, I'm not going to decide that [the judge] made a mistake when she sentenced Mr. Posey in 2007. The Court of Appeals would have to make that decision." 7 VRP at 15. The trial court then sentenced Posey, treating his 2007 convictions as separate criminal conduct for offender score calculation purposes. Posey appeals.

## ANALYSIS

### I. ER 404(b) Gang Evidence, Harmless Error

Posey argues that the trial court erred in admitting evidence of his gang affiliation under ER 404(b) because its prejudicial effect outweighed any probative value relating to his charged crime. We hold that even if the trial court improperly admitted gang evidence, any error was harmless under the facts presented here.

An evidentiary error which is not of constitutional magnitude requires reversal only if the error, within reasonable probability, materially affected the trial's outcome. *State v.*

*Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). Circumstantial evidence is as admissible and relevant as direct evidence. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). Circumstances relevant to deciding premeditation include "motive, prior threats, multiple wounds inflicted or multiple shots, striking the victim from behind, assault with multiple means or a weapon not readily available, and the planned presence of a weapon at the scene." *State v. Ra*, 144 Wn. App. 688, 703, 175 P.3d 609, *review denied*, 164 Wn.2d 1016 (2008).

Applying the harmless error standard, we must determine whether, within reasonable probability, the gang evidence materially affected the trial outcome. We conclude, like in *State v. Mee*, 168 Wn. App. 144, 275 P.3d 1192, *review denied*, 175 Wn.2d 1011 (2012), that any error in admitting gang evidence was harmless; it is harmless here because overwhelming non-gang evidence demonstrates that Posey shot Newson-Jones with premeditation.

In *Mee*, the State charged Mee with first degree murder by extreme indifference after he shot toward a house when he knew people were present both inside and outside at a party. 168 Wn. App. at 150-51. One of the shots caused a victim to die from internal bleeding. *Mee*, 168 Wn. App. at 151. The trial court allowed evidence that the defendant and others involved were gang members to demonstrate motive under ER 404(b). *Mee*, 168 Wn. App. at 152. Eyewitnesses, however, clarified that Mee shot toward the home and that non-gang related evidence against Mee was overwhelming and undisputed. *Mee*, 168 Wn. App. at 159. We held that the trial court abused its discretion in admitting the gang evidence because its prejudicial effect outweighed its probative value, but that the error was harmless. *Mee*, 168 Wn. App. at 159-60.

Here, Detective Ringer testified about the Hilltop Crips resorting to violence. He testified how a small argument or perceived act of disrespect can lead to a shooting. He explained that any Hilltop Crip in good standing is prone to act violently and is expected to be violent. Although the State offered gang evidence to demonstrate premeditation and motive, the State proved these elements through other, non-gang-related testimony: The jury heard testimony of a verbal dispute between Posey and Newson-Jones. Then, Posey pulled a gun from his coat and aimed it at Newson-Jones's head. Hines intervened and grabbed Posey's arm, wrestling over the gun to diffuse the situation; but Posey eventually overpowered Hines and shot Newson-Jones.

It is undisputed that Posey shot Newson-Jones. The only issue at trial was whether Posey shot him with premeditation. The State offered undisputed evidence that Posey brought a gun to the scene, pointed it at Newson-Jones's head, and struggled over it with Hines for 30 seconds before shooting. This evidence overwhelmingly showed that, with premeditation, Posey shot Newson-Jones. Accordingly, based on the independent evidence showing premeditation, there is no reasonable probability that admission of the gang evidence affected the jury verdict. We hold, therefore, that admission of the gang evidence, if error, was harmless.

## II. SENTENCING

Posey next argues that the trial court improperly denied his request to continue sentencing to research whether his 2007 drive-by-shooting convictions constituted same criminal conduct under RCW 9.94A.525(5)(a)(i). Because the trial court mistakenly believed it had no discretion to consider whether Posey's three prior convictions constituted same criminal conduct,

it did not address that issue, as it must under state law. Accordingly, we remand for resentencing.

### A. Standard of Review and Rules of Law

We review a trial court's discretionary actions on matters within the Washington Sentencing Reform Act[7] for abuse of discretion or misapplication of the law. *State v. Burns*, 114 Wn.2d 314, 317, 788 P.2d 531 (1990). RCW 9.94A.525 provides,

> (5)(a) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
>     (i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or prior juvenile offenses for which sentences were served consecutively, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used.

Under RCW 9.94A.525(5)(a)(i), "[a] sentencing court [] *must* apply the same criminal conduct test to multiple prior convictions that a court has not already concluded amount to the same criminal conduct." *State v. Torngren*, 147 Wn. App. 556, 563, 196 P.3d 742 (2008), *superseded on other grounds*, *State v. Winborne*, 167 Wn. App 320, 273 P.3d 454, *review denied*, 174 Wn.2d 1019 (2012). A sentencing court "has no discretion" regarding whether to apply this same criminal conduct test to multiple prior convictions that a court has not already concluded amount to same criminal conduct. *Torngren*, 147 Wn. App. at 563. And, "the

---

[7] Chapter 9.94A RCW.

language of [RCW 9.94A.525(5)(a)[8]] appears clear and unambiguous in mandating that the current sentencing court determine whether to count prior offenses, served concurrently, as separate offenses." *State v. Reinhart*, 77 Wn. App. 454, 459, 891 P.2d 735, *review denied*, 127 Wn.2d 1014 (1995). Also, a defendant may waive an objection to the determination of same criminal conduct by stipulating to facts, even to the trial court's calculation of the offender score for two or more current offenses. *State v. Nitsch*, 100 Wn. App. 512, 522, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000).

## B. Analysis

Posey contends that the trial court misunderstood its legal obligation to independently decide the same criminal conduct classification of his three 2007 convictions for drive-by shooting. Before sentencing on this matter, Posey explained that one could not distinguish the three earlier offenses, as they involved the same victim, time, and intent, even though the prior sentencing court did not count them as same criminal conduct. The State assured the trial court that Posey's prior convictions did not constitute same criminal conduct, but were part of a plea deal; and, it presented a copy of Posey's 2007 judgment and sentence, identifying an unchecked box next to a provision that prompted a sentencing court to indicate if Posey's convictions constituted same criminal conduct. Posey asked the sentencing court in his present matter to determine whether those prior offenses qualified as same criminal conduct, but it declined:

> I think that when the Judge in February of 2007 took the plea and sentenced Mr. Posey with respect to those three counts, that was the Judge or Court to make that determination as it relates to those three counts. Once that determination was made, that determination, as far as I'm concerned, *stays with Mr. Posey forever absent some other change in the law*, and I only decide the current offenses that

---

[8] *Reinhardt* applied former RCW 9.94A.360(6)(a) (1988), which contained nearly identical language to today's RCW 9.94A.525(5)(a).

I'm sentencing to and whether or not there would be some merger or one criminal conduct or something like that in front of me, not for something that's already taken place. *That's my understanding.*

7 VRP at 12-13 (emphasis added). The trial court reviewed Posey's prior judgment and sentence and simply "accept[ed] this at face value." 7 VRP at 14.

The State cites *Nitsch* to support its argument that Posey waived any right to reopen his 2007 sentence. In *Nitsch*, the defendant pleaded guilty in exchange for the State's promise not to file additional charges, and he agreed to a standard range that implied his two counts were scored as if they did not constitute same criminal conduct. *See Nitsch*, 100 Wn. App. at 522. Because Nitsch agreed to this offender score, Division One of this court held that he waived his objection to the offender score. It rejected Nitsch's argument that the trial court was required to sua sponte perform a same criminal conduct analysis. *Nitsch*, 100 Wn. App. at 520-21.

But *Nitsch* differs from the present matter because it involved a defendant who appealed his present sentence after *agreeing to his offender score* for that sentence. Nitsch pleaded guilty and impliedly agreed to his offender score without objection. Here, Posey contested his *present* offender score and the trial court's use of his *2007* judgment and sentence without first inquiring whether his *2007* convictions constituted same criminal conduct. Therefore, unlike Nitsch, Posey objected to his present offender score and preserved this issue for appeal.

Here, the trial court declined to apply a "same criminal conduct" test to Posey's prior convictions, apparently under the mistaken impression that an earlier sentencing court had already concluded that those convictions did not amount to same criminal conduct. But this assumption is inaccurate: No prior sentencing court had already determined that Posey's earlier convictions did not amount to the same criminal conduct. Because the trial court

11

misapprehended the facts about the prior sentencing court's ruling, it misapplied the law in refusing to consider whether Posey's earlier convictions constituted the same criminal conduct for purposes of the instant sentencing. *See Burns*, 114 Wn.2d at 317.

Accordingly, we affirm Posey's conviction but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Hunt, J.

Quinn-Brintnall, J.

12