IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| Miranda Rose Bena, | ) | |
| | ) | No. 36784-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| Christopher N. Popov, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Christopher Popov appeals the entry of a protection order that

restrained him from contact with his former girlfriend and their children. He contends

the superior court denied him due process when entertaining seven statements filed on the

day of the protection order hearing. Because Popov did not seek a continuance of the

hearing and because he shows no prejudice by reason of the court considering the

statements, we deny Popov's appeal.

FACTS

Between 2010 and 2018, Miranda Bena and Christopher Popov engaged in a

committed relationship. The couple bore two children, C.J.P., born in 2011, and M.R.P.,

born in 2017.

On March 13, 2019, Miranda Bena filed a petition for order for protection against Christopher Popov. On the petition form, Bena asked the court to restrain Popov from contact with her and the couple's two children. Bena related an incident that occurred on the preceding day. According to Bena, Popov appeared at the son's school and attempted to remove the son without Bena's permission. Police intervened.

In her statement under oath in support of the petition, Miranda Bena described an eight-year relationship of abuse. Bena avowed that, over the course of their relationship, Popov: (a) frequently beat pets, (b) punched holes in the wall, (c) required physical restraint from beating and screaming at C.J.P., (d) exhibited verbal abuse and controlling behavior, including yelling, shoving, and blocking her pathway, (e) posted mean messages about her on social media, (f) shot someone in the face with a pellet gun, and (g) abused drugs and alcohol. According to Bena, she feared for her safety and worried about the children being alone with Popov. C.J.P. did not feel safe because he thought his father would try to take him from his mother again.

The superior court granted a temporary order for protection which remained effective until a hearing on March 28, 2019. Christopher Popov received the petition and temporary order for protection on March 15.

At the beginning of the March 28 hearing, Miranda Bena filed with the court and handed to Christopher Popov seven supporting statements respectively from Bena, Bena's grandmother, her mother, her mother's fiancé, her sister, and her two brothers.

The letters accused Popov of physical and verbal abuse, threatening to take the children away, animal abuse, and controlling behavior. The mother's fiancé, Rollie McKown, averred that Popov shot him with a pellet gun.

In the additional statement written by Miranda Bena, she declared:

> During the course of our relationship, I've witnessed abuse and neglect to both animals and people. On more than one occasion I had to forcefully stop [Christopher Popov] from physically and verbally abusing our son. My son [C.J.P.] is extremely frightened of his father[.] [W]henever I would mention him going with [Popov] overnight[,] [i]n tears he would beg to stay home with me. When I would ask why he didn't like going he would tell me his dad gets mad at him very easily and he's scared to be around him alone. In recent months since our separation, I allowed [Popov] to have the kids overnight a few times and he brought them home smelling like marijuana so bad I had to wash the car seat cover and all the kids['] belongings. It was also the middle of winter and the baby had on nothing but a diaper. After these incidences, I did not feel safe letting [Popov] take the kids overnight.

Clerk's Papers at 65.

In her additional statement, Miranda Bena also told of a time when an angry Christopher Popov threw a family dog on the ground, thereby breaking its leg. She claimed she had not mentioned this event, or others, to anyone because she feared Popov would physically retaliate against her or their children. In addition, Bena claimed she had contemplated leaving Popov many times, but, due to her Type I diabetes and resulting inability to work, she was financially dependent on Popov. She also claimed that Popov isolated her from family and friends.

3

At the beginning of the March 28 hearing, the superior court entertained remarks

from Miranda Bena. She briefly spoke, and then the court paused the proceedings to

review the seven statements submitted by Bena. Thereafter the court announced that he

had completed his review of the statements. The superior court then directed Popov to

present his side of the case.

During the hearing, Christopher Popov responded by arguing Miranda Bena

claimed he engaged in assaultive behavior in retaliation for a financial disagreement, not

from concern for the safety of the children:

> To my recollection, there's never been a cop called to the house for
> any kind of incident between me and her. I've taken care of her, her
> younger brother, and my kids since they've both been born. This is all stuff
> from her family trying to make me look bad.
> This started because she didn't get tax money that [she was]
> supposed to get.
> . . . .
> . . . [Bena] was trying to get me to give her $1,000 or 1500 bucks
> from my tax refund. I told her that I didn't feel comfortable giving it to her,
> that I prefer to make the child support, because the money I give her
> doesn't count towards child support. They count it as a gift until it's all
> said and done. That angered her.

Report of Proceedings (RP) at 6-7.

To support his defense, Christopher Popov submitted a letter he received on

March 4, 2019, from Miranda Bena's grandmother, Gloria Hogue. In the letter, Hogue

berated Popov for purportedly reneging on a promise to share his income tax refund with

Bena. Hogue threatened Popov with reporting him to the Internal Revenue Service for

4

improperly claiming Bena's younger brother, Josh, as a dependent. Bena responded, during the March 28 hearing, by denying that her request for the order for protection related to money.

In response to Miranda Bena's description of the incident at C.J.P.'s school involving the police, Christopher Popov stated:

> That weekend was my son [C.J.P.]'s birthday. I was supposed to have him. [Bena] wouldn't answer her phone, wouldn't get back to me, couldn't get ahold of her. I got ahold of her finally on Tuesday and told her I want to see my son for his birthday. Pick him up at school. She met at the school, called the cops. This ordeal happened.

RP at 8. During the hearing, Popov also denied and rebutted other accusations forwarded in the original petition and the seven additional statements.

After Christopher Popov initially ended his comments, the superior court read the letter from Gloria Hogue presented by Popov. The superior court then asked Popov if he wished to speak further, and Popov added some remarks. At no time did Popov ask the superior court to strike the statements from Miranda Bena's witnesses. Popov did not request a continuance so that he might study the statements further or gather information to rebut the statements.

After affording both parties the opportunity to present their respective cases, the superior court ruled in favor of Miranda Bena. The court concluded:

> The evidence is overwhelming. I read these statements, and, sir, they are disturbing. They talk about what it seems to be couched in the form of discipline of children, which is clearly excessive. It also talks

5

about abusing animals, which can also be used to inflict fear on other people.  And so, I'm making a finding that domestic violence has occurred.  I'm going to be entering an order today.

That order will prohibit you from having contact with your children.  But in it, I'm going to put that the family court will have the right to review that.  So that means in family court, that the court can fashion, if it wants, a visitation plan.  But, at this moment, I am extremely concerned about this matter.

RP at 10-11.  The superior court entered an order of protection for one year.  The order reserved for the parties the right to modify its terms in a pending family law case between Miranda Bena and Christopher Popov.

On April 8, 2019, Christopher Popov filed a motion for reconsideration.  The superior court denied the motion.  Because Popov does not assign error to the denial of the motion for reconsideration, we do not relate the facts posited by Popov in support of the motion.

LAW AND ANALYSIS

Christopher Popov solely assigns error to the superior court's acceptance of the seven witness statements furnished by Miranda Bena on the day of the protection order hearing.  Popov argues that the court's consideration of the statements violated his due process rights.  Popov references RCW 26.50.070(1), which directs the superior court to conduct a "full hearing" before entering the final protection order.  In turn, he contends that a "full hearing" must afford a litigant a reasonable opportunity to know the claims of the opposing party and to meet them.

Christopher Popov argues that the superior court did not afford him time to read the witness statements before the court asked him to respond during the hearing. The record does not support this argument. The court paused the proceedings in order to afford the court time to review the statements. Popov then also was afforded time to review the statements. The record does not reflect how long the court paused the proceedings, but Popov never informed the court that he needed additional time to review the statements.

During the March 28 hearing, Christopher Popov never complained about the inability to respond to the seven statements. He never asked the court to strike the statements or to postpone the hearing to afford him additional time to prepare his case. Therefore, we decline to address the merits of Popov's appeal.

Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). RAP 2.5(a) formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> Errors Raised for First Time on Review. The appellate court may refuse to review any claim of error which was not raised in the trial court.

(Boldface omitted.) No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United*

*States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right." To show manifest error, however, the appellant must show actual prejudice from the violation of his constitutional rights. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

Christopher Popov asserts constitutional error, but he does not establish any prejudice. Despite arguing the denial of his due process rights, Christopher Popov does not indicate what further evidence he would have admitted or additional argument he would have supplied the superior court had the court continued the hearing. Our review of the seven statements shows that, although the witnesses supplied additional details beyond the specifics submitted by Miranda Bena in her petition, all of the details surrounded the allegations in the petition concerning assaultive action, cruelty to animals, menacing conduct toward the son, and controlling behavior.

We highlight that Christopher Popov also submitted a letter at the time of the hearing, rather than filing the letter and providing the court and Miranda Bena a copy in advance. Popov claims no error resulting from his submitting new information at the time of the hearing.

CONCLUSION

We affirm the superior court's order of protection.

No. 36784-3-III
*Bena v. Popov*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.


WE CONCUR:


_____
Korsmo, J.

_____
Pennell, C.J.