# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 59206-1-II |
| CHARLES GERARD HOLMES | |
| | UNPUBLISHED OPINION |
| Petitioner. | |

MAXA, P.J. – In this personal restraint petition (PRP), Charles Holmes seeks relief from personal restraint imposed following his 2021 conviction of first degree burglary and two counts of first degree robbery along with deadly weapon sentencing enhancements for each of the convictions. Holmes' convictions arose from an incident in which he entered a trailer and threatened two people there with a BB gun.

During closing arguments, the prosecutor stated, "I've been shot with a BB gun. You know, I think most folks -- maybe/maybe not -- I grew up in Alaska so I was abused as a child -- but, I'm sure some of you have probably experienced the very same thing." Rep. of Proc. (RP) (Jun. 11, 2021) at 52. At sentencing, Holmes stipulated to an offender score that counted his burglary and robbery convictions as separate offenses and did not argue that these convictions constituted the same criminal conduct.

We hold that Holmes (1) waived his prosecutorial misconduct claim regarding the prosecutor's statement because he did not object in the trial court and an instruction could have cured any prejudice, and (2) waived his claim that his burglary and robbery convictions constituted the same criminal conduct because he stipulated to his offender score and did not raise the issue in the trial court.[1]  Accordingly, we deny Holmes's PRP.

FACTS

In February 2020, Holmes and an accomplice entered a woman's trailer.  They wanted to steal her drugs.  Holmes was armed with a BB gun.  In the trailer, Holmes grabbed the woman by her face, pointed the BB gun at her, and demanded she reveal the location of her drugs.  Holmes also demanded drugs from a man in the trailer.

The State charged Holmes with one count of first degree burglary, two counts of first degree robbery, and one count of second degree theft along with deadly weapon sentencing enhancements for each charge.

At trial, witnesses testified to the facts as described above.  The trial court instructed the jury that statements by the attorneys are not evidence, to disregard any statements not supported by evidence, and to decide the case on the law and facts rather than prejudice or emotion.

During closing argument, the prosecutor stated,

> I don't know how many of you are familiar with pump BB guns.  Typically the more you pump it the more powerful it becomes, and the BB travels at a higher velocity.  *But, I've been shot with a BB gun.*  You know, I think most folks -- maybe/maybe not -- *I grew up in Alaska so I was abused as a child* -- but, I'm sure some of you have probably experienced the very same thing.  But most of us think of it, it hits you in your rear end or something like that, not that it's going to cause that much damage; but, what if it hits you in the eye?  Is it going to cause substantial loss or impairment of the function of any bodily part?  Maybe sight.  Of course.

---

[1] Holmes raised a claim of ineffective assistance of appellate counsel in his supplemental brief, but withdrew the issue in his reply brief.  Therefore, we do not address the issue.

So the State would submit that a BB gun is a deadly weapon and can cause substantial bodily harm.

RP (Jun. 11, 2021) at 52-53 (emphasis added).  Holmes did not object to these comments.

The jury found Holmes guilty of first degree burglary and two counts of first degree robbery.  In addition, the jury found that Holmes was armed with a deadly weapon when he committed these crimes.

At sentencing, Holmes stipulated to an offender score that counted his burglary and robbery convictions as separate offenses.  He agreed with the trial court that the stipulation accurately calculated his criminal history and offender score.  And he never argued that his burglary and robbery convictions should be treated as the same criminal conduct.  The trial court did not conduct an analysis of whether Holmes' burglary and robbery convictions constituted the same criminal conduct or consider application of the burglary antimerger statue, RCW 9A.52.050.

The trial court imposed a sentence of 102 months for the first degree burglary conviction and 144 months for each of the first degree robbery convictions, to run concurrently.  Each conviction included a 24 month deadly weapon sentencing enhancement, to run consecutively to the other sentences and each other.  In total, the trial court sentenced Holmes to 216 months of incarceration.

On direct appeal, Holmes identified several claims of error, including a claim of ineffective assistance of counsel for not objecting to the prosecutor's comments during closing argument.  *State v. Holmes*, No. 55944-7-II, slip op. at 17 (Wash. Ct. App. Dec. 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055944-7-II%20Unpublished%20Opinion.pdf.  This court ruled that evidence regarding the functioning of a BB gun was not admitted at trial and was outside of common knowledge, and therefore this

comment constituted misconduct. *Id.* at 18. But the court concluded that Holmes could not meet his burden of showing that the outcome of the trial would have been different if defense counsel had objected. *Id.* Therefore, the court held that Holmes's ineffective assistance of counsel claim failed. *Id*. at 18-19. The court did not specifically address the prosecutor's comments about being shot with a BB gun and being abused.

Holmes subsequently filed a CrR 7.8(b) motion in the trial court, which the trial court transferred to this court as a PRP.

ANALYSIS

A.    PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means more than showing a possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

B.    PROSECUTORIAL MISCONDUCT

Holmes argues that the prosecutor committed misconduct when he stated that he had been shot by a BB gun and was abused as a child. We hold that Holmes waived this argument when he failed to object in the trial court.[2]

---

[2] On direct appeal, Holmes challenged the prosecutor's comments about the functioning and effect of pumping a BB gun, arguing that defense counsel was ineffective for failing to object. *Holmes*, No. 55944-7-II, slip op. at 17-18. However, Holmes did not challenge the portion of the prosecutor's comments at issue here. *See id.* Therefore, the bar against relitigating claims

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020). We consider a prosecutor's conduct based on "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury trial. *Id.*

A prosecutor engages in misconduct when he or she encourages the jury to consider evidence that is outside of the record. *State v. Teas*, 10 Wn. App. 2d 111, 128, 447 P.3d 606 (2019). And a prosecutor commits misconduct by appealing to the jury's passion and prejudice. *State v. Pierce,* 169 Wn. App. 533, 552-53, 280 P.3d 1158 (2012).

Holmes failed to object at trial to the alleged misconduct he identifies in this PRP. When the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *State v. Zamora*, 199 Wn.2d 698, 709, 512 P.3d 512 (2022) (alterations in original) (quoting *Loughbom*, 196 Wn.2d at 70). "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." *Zamora*, 199 Wn.2d at 709. If a defendant fails to make this showing, the prosecutorial misconduct claim is waived. *Slater*, 197 Wn.2d at 681.

Courts have found flagrant and ill-intentioned conduct in a "narrow set of cases," including "where the prosecutor otherwise comments on the evidence in an inflammatory

---

already addressed on direct appeal, *see In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013), is inapplicable.

manner." *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018). And it is less likely that improper statements will cause incurable prejudice when they do not have an inflammatory effect. *See State v. Emery*, 174 Wn.2d 741, 762-63, 278 P.3d 653 (2012). The defendant "must show that the prejudice was so inflammatory that it could not have been defused by an instruction." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

    2.    Analysis

The prosecutor stated that "I've been shot with a BB gun," and then later when suggesting that some jurors also may have been shot by a BB gun stated that "I grew up in Alaska so I was abused as a child." RP (Jun. 11, 2021) at 52.

There is no question these statements were not based on evidence presented at trial. And the prosecutor's statement about his personal life experience was irrelevant and inappropriate. Therefore, we conclude that the prosecutor's comments were improper.

But because Holmes did not object, he has the burden of showing that the comment was so flagrant and ill-intentioned that a jury instruction could not have cured any prejudice. *Zamora*, 199 Wn.2d at 709. Regarding facts outside the evidence, if Holmes had objected, the trial court could have stricken the comment and reminded the jury of the previously given instruction that they must disregard any statement not supported by the evidence and to decide the case based on facts presented at trial. Such an instruction would have cured any prejudice.

Holmes also argues that the prosecutor appealed to the passion and prejudice of the jury by stating that he had been a victim of childhood abuse, presumably by being shot with a BB gun. He claims that this comment would have caused the jury to sympathize with the prosecutor. However, in context it appears that the prosecutor was trying to suggest that some jurors might have been shot with a BB gun and was joking that getting shot by a BB gun happened a lot in

Alaska.  It is unlikely that this comment would have evoked any sympathy from the jury.  We conclude that the statements were not so inflammatory that a jury instruction could not have cured any resulting prejudice.

Accordingly, we hold that Holmes waived his prosecutorial misconduct argument.

C.      SAME CRIMINAL CONDUCT

Holmes argues that he was sentenced in violation of Washington law because the robbery and burglary convictions constituted the same criminal conduct.  We hold that Holmes waived this argument when he failed to raise the issue in the trial court.

1.    Legal Principles

In general, all current offenses are counted separately when calculating a defendant's offender score.  *State v. Jackson*, 28 Wn. App. 2d 654, 662, 538 P.3d 284 (2023), *review denied*, 2 Wn.3d 1027 (2024).  The exception is when "the court enters a finding that some or all of the current offenses encompass the same criminal conduct."  RCW 9.94A.589(1)(a); *see State v. Westwood*, 2 Wn.3d 157, 162, 534 P.3d 1162 (2023) ("The default method of calculating an offender score is to treat all current convictions as separate and distinct criminal conduct.").

"Same criminal conduct" means "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."  RCW 9.94A.589(1)(a).  The defendant has the burden of producing evidence and showing that their offenses constitute the same criminal conduct.  *Westwood*, 2 Wn.3d at 162.

Under the burglary antimerger statute, RCW 9A.52.050, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."  Under this statute, a trial court has discretion to merge or refuse to merge a burglary conviction with a conviction for an offense

committed in the commission of the burglary even if the two offenses constitute the same criminal conduct. *State v. Knight*, 176 Wn. App. 936, 962, 309 P.3d 776 (2013).

The general rule is that "a defendant cannot waive a challenge to a miscalculated offender score." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). However, there is a significant exception to this rule: "While waiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *Id.*

In *State v. Nitsch*, the court held that a defendant's affirmative acknowledgement that the offender score was correctly calculated and the failure to raise a factual dispute regarding same criminal conduct issue constitutes a waiver of a challenge to the offender score on appeal. 100 Wn. App. 512, 522-23, 997 P.2d 1000 (2000). The court noted that "[a]pplication of the same criminal conduct statute involves both factual determinations and the exercise of discretion." *Id*. at 523. Waiver was appropriate because of the defendant's "failure to identify a factual dispute for the court's resolution and a failure to request an exercise of the court's discretion." *Id*. at 520; *see also In re Pers. Restraint of Shale*, 160 Wn.2d 489, 494-96, 158 P.3d 588 (2007) (holding that the defendant could not challenge his offender score because he "failed to ask the court to make a discretionary call of any factual dispute regarding the issue of 'same criminal conduct' and he did not contest the issue at the trial level").

2. Analysis

The trial court sentenced defendant pursuant to an offender score that counted his burglary and robbery conviction as separate offenses. In the trial court, Holmes did not argue

that the crimes constituted the same criminal conduct and stipulated to an offender score that counted these convictions as separate offenses.

Holmes argues that because the burglary and robbery convictions constitute the same criminal conduct, he was sentenced pursuant to an incorrect offender score. But Holmes waived his right to argue that his convictions constitute the same criminal conduct when he stipulated to an offender score that considered them separate offenses and failed to argue that they were the same criminal conduct in the trial court. *Nitsch*, 100 Wn. App. at 522-23. And the trial court had the authority in its discretion to score the burglary and robbery convictions as separate offenses. RCW 9A.52.050.

Accordingly, we conclude that Holmes' same criminal conduct argument fails.

CONCLUSION

We deny Holmes' PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
CHE, J.