[No. 58441-9. En Banc. December 9, 1993.]

*In the Matter of the Personal Restraint of*
KEITH ALLAN RILEY, *Petitioner.*

*Helen A. Anderson* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney for King County,* and *James M. Whisman, Deputy,* for respondent.

ANDERSEN, C.J. —

### FACTS OF CASE

The petitioner in this personal restraint proceeding alleges that he was denied effective assistance of counsel, in violation of his Sixth Amendment rights, when he agreed to an amended sentence after his attorney allegedly gave him erroneous legal advice.

Keith Allan Riley, the petitioner, had two criminal trials scheduled in King County Superior Court in August 1988. The first, for second degree burglary, began August 8, 1988. Mr. Riley attended 2 days of the trial and then failed to return for the remainder of the trial. On August 10, 1988, in his absence, a jury found him guilty as charged. The second was a second degree burglary trial that was scheduled to begin August 24, 1988. The case caption initially listed Mr. Riley's name in that case as "Kevin James Roul" — the

name he gave to arresting officers. Mr. Riley failed to appear for trial on August 24, 1988.

In October 1988, Mr. Riley was charged with possession of stolen property, a firearm.

In November 1988, Mr. Riley was allegedly involved in another burglary resulting in his being charged in July 1989, with second degree burglary.

In February 1989, Mr. Riley was arrested and charged with two counts of armed robbery and with assault on a police officer. At that time, he told arresting officers that his name was Stephen Winger; he was initially charged under that name.

In July 1989, as a result of a plea bargain, Mr. Riley entered a plea of guilty to one of the robbery charges and to the assault charge. The second robbery charge was dismissed. His form plea agreement sets forth the crimes charged and the maximum penalty for those crimes. It also states that the standard range for the robbery (with a deadly weapon) conviction is 81 to 94 months. This range was based on an offender score calculated after reviewing Mr. Riley's criminal history as understood by the prosecutor. The criminal history listed in the plea agreement shows that Mr. Riley had previously been convicted of two burglaries, a forgery and possession of stolen property. An additional possession of stolen property and another burglary were listed as "pending charges". The pending charge of burglary was, in fact, the August 10, 1988, *conviction*. Mr. Riley had not yet been sentenced on that conviction. The fact that this was a conviction apparently escaped the attention of the prosecutor, as well as Mr. Riley and his attorney.

The plea agreement contains the following statement in paragraph 12:

I have been informed and fully understand that the standard sentencing range is based on the crime charged and my criminal history. Criminal history includes prior convictions, whether in this state, in federal court, or elsewhere. . . . I fully understand that if criminal history in addition to that listed in paragraph 5 is discovered, both the standard sentence range and the Prose-

cuting Attorney's recommendation may increase. Even so, *I fully understand that my plea of guilty to this charge is binding upon me if accepted by the court, and I cannot change my mind if additional criminal history is discovered and the standard sentence range and the Prosecuting Attorney's recommendation increases.*

(Italics ours.) Statement of Defendant on Plea of Guilty (Felony), at 4.

On July 10, 1989, the trial court accepted Mr. Riley's plea of guilty. Mr. Riley states that at the time he entered his plea neither his attorney nor the court told him that his sentence could be increased if there was an error in the computation of the standard range. The record, however, shows that Mr. Riley was aware of the possibility that the standard sentence range could increase. At the hearing on the plea, the following exchange took place between Mr. Riley and the prosecutor:

[PROSECUTOR]: Now in this particular case we show that your standard, or your offender score is a five, and that was based upon your disclosing your true identity, which has increased your offender score so that when you plead guilty to Count 2 [first degree robbery] with the deadly weapon allegation, it gives you a standard range of 81 to 94 months; do you know about that?

THE DEFENDANT: Yes.

[PROSECUTOR]: And your assault in the third degree is 17 to 22 months. *Now this could change if we find out that you have more criminal history than what we know about; do you understand that?*

THE DEFENDANT: Yeah.

[PROSECUTOR]: Okay. *And it wouldn't later be a reason for you to take back your guilty plea if we found out you had more crimes than what we know about right now; do you know about that?*

THE DEFENDANT: Yes.

[PROSECUTOR]: Okay. Now right now we show that you have the felonies that I think you have gone over with your defense attorney, . . .

THE DEFENDANT: Right.

[PROSECUTOR]: There [are] three prior felonies and then two pending ones.

THE DEFENDANT: Yes.

(Italics ours.) Verbatim Report of Proceedings (July 10, 1989), at 5-6.

Mr. Riley continued to testify that he understood that the judge did not have to follow the prosecutor's recommendation regarding sentencing and he understood the plea agreement. The trial court then questioned Mr. Riley regarding his understanding of his rights, of what he was giving up, and of the guilty plea itself. Mr. Riley signed the plea agreement in open court and the court accepted the plea.

At the sentencing hearing on August 18, 1989, the trial court imposed an 87-month sentence on the robbery count.

It was not until some time later that the State discovered it had used the wrong offender score in determining the standard range for Mr. Riley's crime. The score was incorrect because the "pending" burglary charge listed in the plea agreement was, in fact, the *conviction* that resulted in August 1988 when Riley fled during the trial and that conviction should have been used in calculating Mr. Riley's offender score.[1]

At the time of this discovery, Mr. Riley was being represented by a public defender on a number of criminal charges. His attorney negotiated a resolution of the sentencing problem and of all Mr. Riley's pending criminal matters. On December 12, 1989, the attorney wrote to Mr. Riley as follows:

> The purpose of this letter is to explain to you in detail the arrangement I have reached with the Prosecutor's office for resolution of your cases and the reasons I believe this is a good resolution. *You are not bound in any way to accept this agreement* but I wanted to make sure you fully understood it and my reasons for recommending it.
>
> As I previously explained, when you were sentenced on the robbery case, the incorrect offender score was used. The burglary case which you had been convicted of but not sentenced on (the one we went to trial on) should have been included in the offender score as a prior conviction but was not. The correct standard range would have been 101-126 months.
>
> You presently have four pending matters: sentencing on the burglary case that we went to trial on, trial on the burglary

---

[1]The offender score under the Sentencing Reform Act of 1981, RCW 9.94A, depends on the prior criminal history of the particular defendant. "Criminal history" is defined as "the list of a defendant's prior *convictions*, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(12)(a) (part).

that was set when you failed to appear, and trial and/or plea on the two "new" cases (one PSP and one burglary). These last three are all presently at the omnibus stage. . . .

The agreement I have worked out with the Prosecutor is as follows. The state would dismiss all three cases presently at the omnibus stage if we agree to amending the judgement and sentence on the robbery case to the correct offender score. The state would recommend the bottom of the range (101 months) on the robbery and a concurrent term on the burglary. My goal in reaching this agreement was to have you serve the least amount of time possible. It is my opinion (and the opinion of a number of other people in my office with whom I have consulted) that the state will be entitled to amend the judgment and sentence in the robbery case regardless of what happens in your other cases and that you would not be entitled to withdraw your plea as a result. I have attached a copy of your plea form from that case; please see paragraph 12.

The major issue I see is the issue of consecutive/concurrent time. . . . The judge, as you know, is not bound to follow the state's recommendation. However, based on my experience, I believe that you are more likely to get concurrent sentences under the agreement I have worked out above. My greatest concern would be that if the one case does not get dismissed on speedy trial grounds and you went to trial, you might very well get consecutive time. . . . Given that you are at the maximum level for burglaries, that would mean an additional five years.

*As I noted above, you are in no way obligated to accept the deal I have worked out.* However, I wanted to make sure you were fully aware of all the possibilities in making your decision.

(Italics ours.)

The agreement offered to Mr. Riley was that in exchange for his agreeing to an amended sentence, the State would: (1) recommend that the court impose an amended determinate sentence of 101 months on the robbery charge (an increase of 14 months in Mr. Riley's sentence); (2) recommend that the court impose a sentence of 43 months on the August 10, 1988, second degree burglary conviction, to run concurrently with the robbery sentence; (3) move to dismiss the two remaining burglary charges and the possession of stolen property charge; and (4) not file any bail jumping charge with respect to any of the above.

Mr. Riley states in his motion to modify that his attorney advised him "he had no choice but to accept [the] offer sub-

mitted by the prosecution."[2] However, the letter written to him by his attorney flatly contradicts that assertion. Mr. Riley accepted the proposal, signed the new agreement in open court, and was sentenced on December 15, 1989.

Mr. Riley now contends that "[a]t all times during the proceeding, petitioner indicated to the court and his attorney that he wished to withdraw the plea. *The court refused to allow him to withdraw the plea.*" (Italics ours.)[3] The record does not reflect that he told anyone he wanted to withdraw his plea. In fact, Mr. Riley had an opportunity to inform the judge that he wanted to withdraw his previous plea, but he did not do so. The court specifically asked him:

> THE COURT: . . . Mr. Riley, is there anything you wish to say in your behalf?

Verbatim Report of Proceedings (Dec. 15, 1989), at 8.

Mr. Riley's complete response is as follows:

> Actually, the only thing I really can say, the last time I was in front of this court, that I did apologize for my behavior, and I explained the fact that I had been a chronic alcoholic and a chronic drug abuser. All the crimes I have committed in my life were related directly to that. But, you know, when I said that last time, I think I said that with my mind, but since I have been to the penitentiary and come back, you know, I would like to reapologize to this court from my heart, because it's not worth it. It's never — you know, if I could redo, you know, that, it surely would be different today after being to a penitentiary and experiencing that. I guess that's all I'd really like to say: That I'm sorry for what I have done.

Verbatim Report of Proceedings (Dec. 15, 1989), at 8-9.

The trial court then entered an amended judgment and sentence according to the terms of the new plea agreement.

Mr. Riley subsequently filed a petition for writ of habeas corpus[4] in the trial court claiming, in part, that he was denied effective assistance of counsel. The proceeding was transferred to the Court of Appeals and was dismissed by

---

[2]Motion To Modify Commissioner's Decision, at 4.

[3]Motion To Modify Commissioner's Decision, at 4-5.

[4]The court treated the petition as a personal restraint petition. RAP 16.3.

the acting chief judge. Mr. Riley moved for reconsideration and the Court of Appeals referred that motion to this court as a motion for discretionary review. This court ultimately granted Mr. Riley's motion for discretionary review, but only as to the issue of ineffective assistance of counsel.

One issue is before us.

## ISSUE

Was defendant denied effective assistance of counsel, in violation of the Sixth Amendment, when his attorney told him that the State would be entitled to amend his sentence to reflect the correct offender score and that he would not be entitled to withdraw his guilty plea because of the error?

## DECISION

CONCLUSION. We answer the question posed by that issue in the negative. Petitioner fails to allege or prove actual prejudice as a result of the allegedly erroneous advice of his counsel and thus does not satisfy the prejudice prong of the ineffective assistance of counsel test.

The essence of Mr. Riley's ineffective assistance of counsel claim is that his attorney's representation fell below that of a reasonably competent attorney when he was informed that the State would be able to amend the robbery sentence and that Mr. Riley would not be able to withdraw his guilty plea. If he had not been so advised, Mr. Riley apparently would not have agreed to the amended sentence and would have withdrawn his plea — necessitating a trial on two counts of first degree robbery, with deadly weapon, and on third degree assault; two trials on the two counts of second degree burglary; trial for possession of stolen property; possibly trials on the bail jumping charges; and an appearance for sentencing on the second degree burglary conviction.[5]

The sixth amendment to the United States Constitution guarantees a criminal defendant the right "to have the assistance of counsel for his defense." U.S. Const. amend. 6.

---

[5]Mr. Riley's attorney stated in the letter of December 12, 1989, that two of the pending charges against Mr. Riley might be dismissed on speedy trial grounds.

The right to counsel means the right to the effective assistance of counsel.[6]

In *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court established a 2-prong test for determining whether assistance of counsel is ineffective. Both prongs must be proved by the defendant in order to prevail.[7]

Under one prong — the performance prong — the defendant must show that counsel's performance was deficient. Under the other prong — the prejudice prong — the defendant must show that the deficient performance prejudiced the defense.[8] This test was adopted by this court in *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922 (1986).[9]

The *Strickland* test applies in cases where a criminal defendant enters a plea of guilty as well as in those cases where the defendant requests a trial.[10]

The court may begin its review of defendant's claim with an examination of either prong. If the prejudice prong is not proved by defendant, then the court need not proceed to an examination of the performance prong.[11]

Here the defendant does not satisfy the prejudice prong and, consequently, we need not, and do not, consider whether the attorney's performance was deficient.

■ In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable

---

[6]*Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 25 L. Ed. 763, 90 S. Ct. 1441 (1970)).

[7]*Strickland*, 466 U.S. at 687; *In re Rice*, 118 Wn.2d 876, 888, 828 P.2d 1086, *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 344, 113 S. Ct. 421 (1992).

[8]*Strickland*, 466 U.S. at 687.

[9]*See also State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 112, 113 S. Ct. 164 (1992).

[10]*Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985); *In re Peters*, 50 Wn. App. 702, 703, 750 P.2d 643 (1988).

[11]*Strickland*, 466 U.S. at 697.

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[12] In *Hill v. Lockhart*, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985), the defendant filed a habeas corpus petition alleging ineffective assistance of counsel. He alleged that his attorney had told him he would become eligible for parole after serving one-third of his sentence. Because he had a prior felony conviction, this advice was incorrect and he would not be eligible for parole until one-half of his sentence was served. The Supreme Court held that it was unnecessary to determine whether counsel's erroneous advice as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because the defendant's

> allegations are insufficient to satisfy the *Strickland* v. *Washington* requirement of "prejudice." Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Hill v. Lockhart*, 474 U.S. at 60.

In the present case, Mr. Riley's petition for writ of habeas corpus and his supporting memorandum allege that he told his attorney that "he would like to withdraw his original sentence on the Robbery and Assault charges." He does not insist on going to trial on the many charges against him, but rather states:

> Petitioner prays that petitioner be released from incarceration forthwith, as such is the only curative action and/or measure for the wanton and blatant violations complained of herein.

Memorandum Supporting Petitioner's Petition for Writ of Habeas Corpus, at 15.

---

[12]*Hill v. Lockhart*, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

■ A bare allegation that a petitioner would not have pleaded guilty if he had known all of the consequences of the plea is not sufficient to establish prejudice under the *Strickland* test.[13] In order for a petitioner in a personal restraint proceeding to be entitled to an evidentiary hearing on the issue of ineffective assistance, the petitioner must present at least a prima facie case showing *actual* prejudice.[14]

Mr. Riley does not allege any prejudice. He does not allege special circumstances that would support a conclusion that he placed any special emphasis on the standard range sentence as originally calculated by the prosecutor. To the contrary, his attorney at the initial plea hearing stated that he did not have a solid defense to the robbery and assault charges and believed the deal offered by the State would result in substantially less jail time than if he were convicted and sentenced following a trial.[15] This also would have been true if the offender score had been properly computed.

In exchange for an additional 14 months on his sentence, Mr. Riley resolved all of his criminal cases and received the low end of the correct sentencing range for the robbery conviction. In view of the fact that he agreed that the standard range might change and that at the initial sentencing, the judge determined a midrange sentence was appropriate in his case, Mr. Riley probably benefited as the result of his attorney's negotiations rather than being prejudiced in any way. In entering into the agreement to amend the sentence, he essentially gave up his right to challenge the State's attempt to correct his sentence in exchange for a recommendation on the burglary sentence, dismissal of three felony

---

[13]*In re Peters*, 50 Wn. App. 702, 708, 750 P.2d 643 (1988) (defendant misunderstood the implication of his conviction on deportation proceedings).

[14]*In re Peters*, 50 Wn. App. at 708 (citing *In re Hews*, 99 Wn.2d 80, 91, 660 P.2d 263 (1983)).

[15]Verbatim Report of Proceedings (Aug. 18, 1989), at 5-6.

charges and a guarantee that the State would not file bail jumping charges.

Mr. Riley fails to show prejudice resulted from this agreement. He therefore has not met his burden of proof under the prejudice prong of the *Strickland* test.

Dismissal of the petition is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.