

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74043-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TYLER ANDREW WAGNER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 14, 2016 |
| | ) | |

VERELLEN, C.J. — Tyler Wagner pleaded guilty to criminal trespass and malicious mischief. He later moved to withdraw the plea, alleging ineffective assistance of counsel during plea negotiations. Wagner contends that defense counsel should have undertaken an additional investigation of two potential witnesses before advising him to plead guilty. But defense counsel was already aware of the witnesses' potential testimony and their significant credibility problems. Under the circumstances, the decision not to investigate further was reasonable and did not constitute deficient representation. Accordingly, the trial court did not abuse its discretion in withdrawal of the guilty plea. We affirm.

## FACTS

During the early morning hours of September 23, 2014, an Everett homeowner called 911 and reported hearing the sound of breaking glass and voices from the house next door. The house had been the subject of previous break-ins.

Everett police officers contacted Lourde Godiava, the owner and determined that no one was supposed to be in the house. Upon arrival, the officers noticed an open sliding glass door and a broken kitchen window. The officers then encountered Yee Xiong and Tyler Wagner as they came out of the house. Officers also found A.J., a juvenile female, inside the house.

After waiving his rights, Xiong gave the officers varying accounts of whether he had broken into the house. At one point, Xiong claimed that his brother owned the house. Xiong also said that he had a prior relationship with Godiava and had lived in a shed behind Godiava's house in Mill Creek. Xiong claimed that he was in the house to check on a television and bicycle that he had stored there several months earlier. He explained that he moved a large box containing an entertainment center to the front door to make it easier for him to find his television. At one point, Xiong acknowledged that he did not have permission to be in the house.

Wagner told police that he was there to help Xiong, whom he described as an acquaintance. He claimed that Xiong said his brother owned the house and that he was there to retrieve property he had stored in the house. Wagner acknowledged that he saw Xiong enter the house through a broken window. While inside, Xiong directed Wagner to move the box containing the entertainment center to the front door. Xiong told Wagner that he did not own the box. Wagner admitted he felt "spooked"[1] by going into the house.

Godiava told the police that Xiong did not have permission to enter the Everett house. He acknowledged that he had previously hired Xiong to do some landscaping and Xiong had stayed in a shed at Godiava's house in Mill Creek for a short time. The two

---

[1] Clerk's Papers (CP) at 25.

later had a falling-out because Xiong "was always lying and involved in criminal activity."[2] Godiava alleged that Xiong had previously burglarized both of his houses while Godiava was in jail. Godiava claimed he had not seen Xiong in more than a year.

The State charged both Xiong and Wagner with residential burglary. On March 11, 2015, Xiong pleaded guilty to an amended information charging one count of criminal trespass in the first degree and one count of malicious mischief in the third degree. On June 2, 2015, Wagner pleaded guilty to identical charges.

Prior to sentencing, Wagner moved to withdraw his guilty plea. Newly appointed counsel argued that Wagner's plea attorney had provided constitutionally deficient assistance when he failed to interview Xiong and further investigate Godiava. Counsel maintained that further investigation would have demonstrated that Xiong was authorized to stay in Godiava's house, supporting Wagner's claim that his entry at Xiong's invitation was not unlawful.

The trial court found that defense counsel did not provide deficient assistance and denied Wagner's motion to withdraw the guilty plea. The court noted that there had been a substantial amount of investigation and that the attorneys for Xiong and Wagner shared the results. The court concluded that Wagner's attorney appeared to have made a reasonable tactical decision not to pursue an additional investigation in light of Xiong's obvious and substantial credibility problems. The court then sentenced Wagner to a 364-day sentence, with 274 days suspended.

---

[2] CP at 35.

3

## DISCUSSION

Wagner contends that he was denied effective assistance of counsel during plea negotiations when his plea attorney failed to interview Xiong or investigate the relationship between Xiong and Godiava. He argues that further investigation would have revealed exculpatory evidence supporting a defense that his entry into Godiava's house was not unlawful. Wagner suggests that had he known of that evidence, he would not have pleaded guilty and would have insisted on going to trial.

Under CrR 4.2(f), a court must permit withdrawal of a guilty plea whenever necessary to correct a "manifest injustice." This is a demanding standard, and the defendant bears the burden of establishing that he has suffered "'an injustice that is obvious, directly observable, overt, not obscure.'"[3] Ineffective assistance of counsel may constitute a manifest injustice sufficient to permit withdrawal of a guilty plea.[4] We review the trial court's decision on a motion to withdraw a guilty plea for an abuse of discretion.[5]

In order to establish ineffective assistance, Wagner must demonstrate both that counsel's representation fell below an objective standard of reasonableness, and that prejudice resulted.[6] "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he

---

[3] State v. Branch, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996) (quoting State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)).

[4] State v. Taylor, 83 Wn.2d 594, 597, 521 P.2d 699 (1974).

[5] State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012).

[6] See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

would not have pleaded guilty and would have insisted on going to trial."[7] When counsel's alleged error is the failure to investigate exculpatory evidence, the assessment of whether the error prejudiced the defendant involves the likelihood that the evidence "'would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.'"[8] To provide constitutionally adequate assistance, "'counsel must, at a minimum, conduct a reasonable investigation enabling [counsel] to make informed decisions about how best to represent [the] client.'"[9]

We begin our analysis with the "strong presumption" that counsel's performance was reasonable.[10] To rebut this presumption, Wagner must establish the absence of any conceivable legitimate tactic explaining counsel's performance.[11] We review ineffective assistance claims de novo.[12]

Wagner's arguments rest on the assertion that defense counsel would have uncovered exculpatory evidence had he interviewed Xiong or investigated the prior relationship between Godiava, the owner of the house, and Xiong. But the record

---

[7] In re Pers. Restraint of Riley, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

[8] State v. Garcia, 57 Wn. App. 927, 933, 791 P.2d 244 (1990) (quoting Hill, 474 U.S. at 59).

[9] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (emphasis omitted) (alterations in original) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994)).

[10] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

[11] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011).

[12] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

shows that defense counsel was fully aware of this potential evidence before Wagner pleaded guilty.

The police reports established that Xiong gave contradictory accounts of his presence at Godiava's house, including an admission that he did not have permission to enter the house. Defense counsel also knew that Godiava had expressed considerable hostility toward Xiong, calling him a compulsive liar and alleging that he previously burglarized both of his houses.

Moreover, during the course of plea negotiations, defense counsel was also in contact with Xiong's attorney, who provided defense counsel and the deputy prosecutor with the results of her investigation. Among other things, defense counsel learned that there was evidence suggesting that Xiong had had an earlier relationship with Godiava's family and appeared to have been authorized to be at the Everett house on two earlier occasions. Xiong's counsel also shared her summary of the transcript of an insurance hearing involving some of Godiava's earlier insurance claims, which indicated that Godiava frequently changed his name, hid income, and "melted down during questioning"[13]

But defense counsel clearly recognized that both Xiong and Godiava presented significant credibility problems and that their relationship was "filled with deceit."[14] Nothing in the record suggests that either witness could have provided any additional exculpatory information or evidence that would have been helpful to Wagner's decision to plead guilty. Under the circumstances, counsel could reasonably have concluded

---

[13] CP at 42.
[14] CP at 45.

6

that any further investigation of Xiong or Godiava would not have been helpful. Defense counsel's actions constituted a reasonable tactical decision, not deficient performance.[15]

Because Wagner has failed to demonstrate that defense counsel's representation was deficient, we need not address his claim of prejudice.[16] The trial court did not abuse its discretion in denying Wagner's motion to withdraw his guilty plea.

Affirmed.

WE CONCUR:

---

[15] See In re Pers. Restraint of Clements, 125 Wn. App. 634, 647, 106 P.3d 244 (2005) (defense counsel's decision not to interview potential witnesses with credibility issues was reasonable).

[16] See State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2011).