# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 52700-6-II |
| DANIEL SCOTT MOODY, JR., | |
| Petitioner. | UNPUBLISHED OPINION |

MELNICK, J. — Personal restraint petitioner Daniel Moody seeks relief from his 2017 guilty plea and sentence for two counts of child molestation in the second degree, commercial sex abuse of a minor, and communication with a minor for improper purposes. In 2018, the State filed a motion and order to correct the judgment and sentence.

Moody argues that, based on the change to his sentence, his plea was involuntary and he was entitled to the option of withdrawing his plea, which was not given. Moody also argues that his plea was invalid because his offender score was erroneously calculated.

We deny Moody's petition.

## FACTS

As a result of a sting operation, the State charged Moody with attempted rape of a child in the first degree, commercial sex abuse of a minor, and communication with a minor for improper purposes.

The State then amended the information, and Moody entered guilty pleas pursuant to *In re Barr*.[1] He pled guilty to two counts of child molestation in the second degree (counts I, IV), crimes Moody did not commit, in addition to commercial sex abuse of a minor (count II) and communication with a minor for improper purposes (count III).

Moody had no prior criminal history but stipulated to the correctness of his offender score of 9.

In Moody's statement on his plea of guilty to the sex offenses, Moody wrote:

In May of 2017 I agreed to pay money in exchange for sex with two ficticious [sic] children under the age of 12 in Pierce County, WA. In anticipation of this, I communicated by text message with one of the ficticious [sic] children about my intentions. I am pleading to counts I & IV pursuant to *In re Barr*. I drove to an agreed location with intent to have sex with the ficticious [sic] children, where I was arrested.

Pers. Restraint Pet. (PRP), Attach. (statement of defendant on plea of guilty to sex offense) at 9.

The court sentenced Moody to 108 months of confinement and 36 months of community custody on each count. The court then entered an exceptional sentence which provided that the 36 months of community custody on counts I and II would run consecutive to each other.

Approximately one year later, the State filed a motion to correct the judgment and sentence. The motion recognized that "the combined incarceration and community custody terms cannot exceed the statutory maximum sentence for any count, so in [Moody's] case the terms of

---

[1] *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 270, 684 P.2d 712 (1984) (allowing a defendant to plead guilty to a charge that was not committed in order to avoid near certain conviction for a greater offense). Here, in Moody's statement on his plea of guilty to the sex offenses, the judge wrote that Moody "orally stated/confirmed that he has reviewed all the evidence with his lawyer and believes he would be convicted at trial, so he is pleading guilty to crimes he did not commit to take advantage of the State's offer." Pers. Restraint Pet. (PRP), Attach. (statement of defendant on plea of guilty to sex offense) at 9. Neither the report of proceedings from Moody's sentencing hearing nor his signed plea agreement is in the record.

community custody are limited to 12 months on Counts I, II, and IV, and 0 months on Count III." Response to PRP, App. C at 3.

The court granted the motion and changed Moody's sentence from 36 months of community custody on each count to 12 months for counts I, II, and IV, and 0 months for count III.[2] The order stated that the first two counts ran consecutive to each other but counts I, III, and IV ran concurrent with each other. The court also entered corrected findings of fact and conclusions of law for an exceptional sentence.

Moody then filed this timely PRP.

In a declaration, Moody stated that he was not told of the change to his judgment and sentence at the time the court changed it and was not asked whether he wished to withdraw his guilty plea. He stated that if the State would have asked him, he would have withdrawn his guilty plea. He also stated that the "concept of 'same criminal conduct' was not explained in [his] plea agreement." PRP, Attach. (emailed declaration of Daniel Moody) at 1.

In another declaration, Moody stated that if he "had been given notice and told that [he] could withdraw [his] guilty plea due to the mutual mistake, [he] would have done so." Reply in Support of PRP, Attach. (declaration of Daniel Moody) at 1.

ANALYSIS[3]

I.    RIGHT TO WITHDRAW PLEA AGREEMENT

Moody argues that when a plea agreement conflicts with the law, "the defendant must be given an opportunity to withdraw the plea." PRP at 5. Moody contends that because he was never

---

[2] The amended judgment and sentence appears to have a scrivener's error. It states that Moody's community custody is 12 months for counts I, II, and IV, and 0 months for count IV.

[3] The State argues that the record is insufficient for us to review Moody's PRP because he did not supply the plea agreement he signed or the transcript from his sentencing hearing. We disagree.

3

given the opportunity to withdraw his plea, we "should reverse and remand so that he can be given the choice." PRP at 6. In the event we require that he show prejudice, Moody argues that he has made the necessary showing.

The State argues that under *State v. Buckman*, 190 Wn.2d 51, 409 P.3d 193 (2018), Moody is not entitled to withdraw his guilty plea because he cannot show actual and substantial prejudice. We agree with the State.

A defendant's guilty plea is valid if it is knowing, voluntary, and intelligent. *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); *see also* CrR 4.2(d). "A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences." *Buckman*, 190 Wn.2d at 59. "[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence of the plea, regardless of whether the actual sentencing range is lower or higher than anticipated." *Mendoza*, 157 Wn.2d at 591. "Mandatory community placement is a direct consequence of a guilty plea because it 'produces a definite, immediate and automatic effect on a defendant's range of punishment.'" *State v. Turley*, 149 Wn.2d 395, 399, 69 P.3d 338 (2003) (quoting *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996)); *see also In re Pers. Restraint of Quinn*, 154 Wn. App. 816, 840, 226 P.3d 208 (2010) (concluding that the correct length of a term of community custody is a direct consequence of a guilty plea). The voluntariness of a defendant's waiver of the right to jury trial is a legal question, which we review de novo. *State v. Curry*, 191 Wn.2d 475, 506, 423 P.3d 179 (2018); *Buckman*, 190 Wn.2d at 57.

The parties disagree whether Moody must show prejudice. To support his argument that he is entitled to withdraw his plea without showing prejudice, Moody relies on *State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988), *overruled in part by State v. Barber*, 170 Wn.2d 854, 248 P.3d

494 (2011). In *Miller*, the prosecutor inadvertently misinformed the defendant that he could potentially receive a sentence of less than 20 years. 110 Wn.2d at 529. The defendant then pled guilty to murder in the first degree. *Miller*, 110 Wn.2d at 529. The plea agreement allowed the defendant to argue for an exceptional sentence of less than 20 years at sentencing; the State would recommend a term of 20 years but would not agree to the exceptional downward sentence. *Miller*, 110 Wn.2d at 529.

Three months after entering the plea, but before the court sentenced him, the defendant learned that he could not receive a sentence of less than 20 years. *Miller*, 110 Wn.2d at 529; *see* former RCW 9.94A.120(4) (1985). The defendant then moved to withdraw his guilty plea, which the trial court denied. *Miller*, 110 Wn.2d at 529.

On appeal, all parties agreed that the defendant's plea was involuntary because he did not understand the sentencing consequences of pleading guilty. *Miller*, 110 Wn.2d at 531. Thus, the court only had to determine the appropriate remedy between withdrawal of the guilty plea or granting specific performance of the agreement.[4] *Miller*, 110 Wn.2d at 531. Miller argued that because "the plea agreement [he entered] was not legal . . . the only appropriate remedy for the mutual mistake underlying the agreement [was] to allow him to withdraw his guilty plea." *Miller*, 110 Wn.2d at 532. The court determined that the appropriate remedy was to allow withdrawal of the guilty plea. *Miller*, 110 Wn.2d at 535.

The State relies on *Buckman* to argue that Moody must show prejudice. In *Buckman*, the defendant pled guilty pursuant to a plea agreement. 190 Wn.2d at 55. However, prior to entering the agreement, the State had erroneously informed Buckman that the maximum sentence for his

---

[4] *But see Barber*, 170 Wn.2d at 870-74 (overruling the portion of *Miller* allowing defendants to enforce unlawful plea agreements).

crime was life in prison.[5] *Buckman*, 190 Wn.2d at 55. Buckman then pled guilty in exchange for a special sex offender sentencing alternative (SSOSA) recommendation from the State. *Buckman*, 190 Wn.2d at 55. He received a SSOSA disposition. *Buckman*, 190 Wn.2d at 56.

After serving his term of confinement, the defendant was released on lifetime community custody. *Buckman*, 190 Wn.2d at 56. He then violated his community custody provisions, had his SSOSA revoked, and received a 114-month sentence. *Buckman*, 190 Wn.2d at 56. At resentencing, the defendant's new attorney realized that Buckman should never have been subject to potential lifetime confinement. *Buckman*, 190 Wn.2d at 56.

The defendant then filed a CrR 7.8 motion seeking to withdraw his plea. *Buckman*, 190 Wn.2d at 56 n.1. The State conceded that he had been improperly sentenced, but the trial court disagreed. *Buckman*, 190 Wn.2d at 56. The defendant appealed.

The defendant argued that (1) his plea was involuntary and (2) the error prejudiced him because he would not have pled guilty if he had been adequately informed of his potential consequences. *Buckman*, 190 Wn.2d at 58. Because Buckman "was misinformed of his possible sentencing consequences," the court concluded that his plea was involuntary. *Buckman*, 190 Wn.2d at 60.

In analyzing prejudice, the court noted that "[a] motion to withdraw a plea after judgment has been entered is a collateral attack . . . [which] require[s] the petitioner to show 'actual and substantial prejudice.'" *Buckman*, 190 Wn.2d at 60 (quoting *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 598-99, 316 P.3d 1007 (2014)). Because Buckman did not show actual and

---

[5] Because the defendant was a minor at the time of the crime, he was subject to a maximum sentence of 114 months. RCW 9.94A.510, .515, .701(1)(a).

substantial prejudice, the court denied his motion to withdraw his plea and remanded for resentencing. *Buckman*, 190 Wn.2d at 71.

We conclude that *Buckman* controls. *Buckman* clarified that defendants who seek to withdraw a guilty plea after sentencing must show actual and substantial prejudice. Here, Moody's PRP seeks to withdraw his guilty plea. He filed his PRP after he was sentenced. Thus, Moody must show actual and substantial prejudice. *Buckman*, 190 Wn.2d at 60.

The actual and substantial prejudice inquiry is "an objective, rational person inquiry, rather than a subjective analysis." *Buckman*, 190 Wn.2d at 66. A defendant must show that "a rational person in [the defendant's] situation would more likely than not have rejected the plea and proceeded to trial." *Buckman*, 190 Wn.2d at 69. Therefore, "'[a] bare allegation that a petitioner would not have pleaded guilty if he had known all the consequences of the plea is not sufficient to establish prejudice.'" *Buckman*, 190 Wn.2d at 67 (alteration in original) (quoting *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 782, 863 P.2d 554 (1993)).

Here, like in *Buckman*, Moody asserts that if he had been correctly informed of his sentencing consequences he would not have pled guilty. In *Buckman*, the court concluded that the defendant's assertion, without more, was insufficient. 190 Wn.2d at 69-70. Therefore, we similarly conclude that Moody's assertion, without more, is insufficient for him to show actual and substantial prejudice.[6]

II.     SAME CRIMINAL CONDUCT

Moody argues that either his "plea is invalid or the agreement that [his] offender score [was] 9 is invalid because it was not the product or [sic] a stipulation and is not supported by the

---

[6] Moody also argues that a rational person would have rejected the plea because it was based on *In re Barr*. This assertion, without more, is also insufficient for him to show actual and substantial prejudice.

7

facts." PRP at 7. Therefore, Moody contends that either we should invalidate his plea or remand for resentencing. We disagree.

A defendant can waive a challenge to a miscalculated offender score "where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002).

In *State v. Nitsch*, 100 Wn. App. 512, 518-19, 997 P.2d 1000 (2000), the defendant argued for the first time on appeal that the two crimes he was convicted of, burglary in the first degree and assault in the first degree, constituted the same criminal conduct. However, in his presentence memorandum, the defendant had agreed that his offender score had been properly calculated. *Nitsch*, 100 Wn. App. at 521-22.

The court stated:

> This is not an allegation of pure calculation error . . . . Nor is it a case of mutual mistake regarding the calculation mathematics. Rather, it is a failure to identify a factual dispute for the court's resolution and a failure to request an exercise of the court's discretion.

*Nitsch*, 100 Wn. App. at 520 (footnote omitted).

The court also recognized that in the context of plea agreements, "it may not be to the defendant's advantage to raise the same criminal conduct issue" at sentencing. *Nitsch*, 100 Wn. App. at 523. For example, "[t]he defendant may wish to make an argument for a mitigated sentence which is factually inconsistent with the requirements of the same criminal conduct statute." *Nitsch*, 100 Wn. App. at 523. Therefore, the court concluded that the defendant had waived his same criminal conduct argument. *Nitsch*, 100 Wn. App. at 521-22.

Here, like in *Nitsch*, Moody stipulated that his offender score of 9 was correct based on the current offenses. He also filed a sentencing memorandum confirming the same. Additionally, Moody's *In re Barr* plea sought to take advantage of the plea agreement, which, because he pled

8

to crimes for which there was no factual basis, was "factually inconsistent with the requirements of the same criminal conduct statute." *Nitsch*, 100 Wn. App. at 523.  Therefore, we conclude that Moody waived his argument.

We deny Moody's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                          Melnick, J.

We concur:

Maxa, C.J.

Lee, J.