IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>MIGUEL ANGEL MIRANDA,<br><br>                Petitioner. | No. 86064-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — In this personal restraint petition, Miguel Miranda seeks to withdraw his guilty plea to murder in the second degree, unlawful possession of a firearm in the second degree, and witness tampering. He claims that he received ineffective assistance of counsel related to his plea. Miranda also claims that he is entitled to relief because the trial court erred by amending the judgment and sentence in his absence. Because Miranda fails to make a prima facie showing of prejudice, we deny his petition.

FACTS

In 2022, the State charged Miranda with murder in the second degree with a gang aggravator and unlawful possession of a firearm in the second degree, each arising from the shooting death of Jose Esquivel Hernandez on January 24, 2022. The charging document named two codefendants, including Miranda's fiancée, Kimberly Trujillo Mendoza, whom the State charged with rendering criminal assistance in the first degree.

Miranda was initially represented by attorney Stephen Jackson. In support of this petition, Miranda submitted a declaration by Jackson. Jackson declared that Miranda intended to pursue a self-defense theory. According to Jackson, Miranda "wanted to take his case to trial," and because Miranda was firm in that desire, Jackson did not try to negotiate the case. Jackson declared that although he discussed the maximum imprisonment terms with Miranda, he did not recall discussing the amount of earned early release time (ERT) for which the charged offenses were eligible,[1] explaining that "[i]f knowledge of the maximum terms of imprisonment did not dissuade Mr. Miranda from trial, finer details about the exact terms of his imprisonment were not going to rationally change his calculus about proceeding to trial." Furthermore, Jackson declared, "the amount of good time credit that a murder case is eligible for (up to ten percent), is so inconsequential to the overall prison sentence that it would be unlikely to change a person's calculus anyway."

Jackson withdrew as Miranda's counsel in June 2022 because he became a potential witness with respect to new charges the State intended to bring for witness tampering. On June 14, 2022, the superior court appointed Donna Gibson to represent Miranda. At the time, Gibson was employed by North County Public Defense, whose principal attorney was Jason Smith. Gibson later recalled that Smith "took a more active role in Mr. Miranda's representation than [Gibson] because Mr. Smith had a better rapport with Mr. Miranda and the assigned

---

[1] Earned early release time, sometimes called "good time," refers to credit an incarcerated individual receives for good behavior or good performance while incarcerated. In re Pers. Restraint of Talley, 172 Wn.2d 642, 647, 260 P.3d 868 (2011).

prosecutor."

On October 6, 2022, Miranda pleaded guilty to murder in the second degree, witness tampering, and unlawful possession of a firearm in the second degree. In exchange, the State agreed to remove the gang aggravator from the murder count and not pursue a firearm enhancement on that count. The State also agreed to recommend a 16-year sentence and reduce the charge against Mendoza to a gross misdemeanor. The superior court accepted Miranda's plea, and it sentenced him about six weeks later. At sentencing, in support of the 16-year recommendation, the prosecutor argued,

> Mr. Miranda was facing from the State's perspective north of potentially 30 years at jury trial with aggravators and with firearm enhancements that I believe I could prove beyond a reasonable doubt, but there are really good reasons why we came to the resolution we did and came to the sentencing recommendation that we did, which is a little below the midpoint of the standard range sentence. First, what was going against Mr. Miranda was that he had fled the jurisdiction after the shooting and we were able to track him and locate him in a separate state, that required many agencies to find him and he fled from the police upon that arrest as well. So we had strong evidence of consciousness of guilt.
>     And then during the course of this investigation Mr. Miranda is provided discovery and released into the community, which essentially put a target on one Mr. Jimmy Abitia, which I also believe was going to be evidence of consciousness of guilt based on his insistence on obstructing a process.
>     But what weighed in Mr. Miranda's favor and what was going to be somewhat difficult in trial was to explain exactly what happened on the night in question. It was clear that Mr. Miranda shot the victim, it was clear that he killed the victim.
>     What was not clear was really how that altercation began and how that altercation transpired. We have witnesses to the event, but we also had some conflicting information regarding that. On top of that, Mr. Jimmy Abitia as a result of witness tampering attempted to claim responsibility for the murder and that appeared to be an attempt of self preservation. . . . So there are other charges that could have come from this and there are other consequences and there was more time that Mr. Miranda was

facing.

> In my estimation based on my experience he's essentially going to be offered, if the Court follows the agreed recommendation, half of what I believe we would have gotten at the conclusion of a trial should a judge agree with my recommendation, but I think it's appropriate based on all of that information.

Several people gave emotional victim impact statements at Miranda's sentencing, including Esquivel's fiancée, her sister, and Esquivel's sisters. They urged the court to give Miranda "the maximum . . . for what he has done," to let "the full weight of the law" fall on Miranda, and to "give the maximum sentence for each charge." Miranda declined to address the court. The superior court imposed a high-end sentence of 254 months, plus 36 months of community custody.

Miranda subsequently filed this personal restraint petition.

ANALYSIS

Miranda asserts that he is entitled to collateral relief because (1) he received ineffective assistance of counsel related to his plea and (2) the trial court erred by amending the judgment and sentence in his absence.

Relief by way of collateral attack, such as a personal restraint petition, is extraordinary. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). The petitioner must meet a high standard before this court will disturb an otherwise settled judgment. Id. In particular, if the petitioner raises constitutional arguments, the petitioner must "show that a constitutional error caused actual and substantial prejudice." In re Pers. Restraint of Schreiber, 189 Wn. App. 110, 112, 357 P.3d 668 (2015). A stricter standard applies when the petitioner raises nonconstitutional arguments, and the petitioner must "establish[ ] that the claimed

error is 'a fundamental defect resulting in a complete miscarriage of justice.' " Id. at 113 (quoting In re Pers. Restraint of Yates, 177 Wn.2d 1, 18, 296 P.3d 872 (2013)).

A petitioner's allegations must have evidentiary support. Id. "If the trial court record does not support the factual allegations, then the petitioner must show through affidavits or other forms of corroboration that competent and admissible evidence will establish the factual allegations." Id. The petitioner may not rely on "speculation, conjecture, or inadmissible hearsay," and "[b]ald assertions and conclusory allegations" are also insufficient. In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

The petitioner carries the burden of proof by a preponderance of the evidence. In re Pers. Restraint of Skone, 30 Wn. App. 2d 1, 43, 543 P.3d 842 (2024). "If the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect, we deny the personal restraint petition." Schreiber, 189 Wn. App. at 113.

I. Ineffective Assistance Related to Plea

" 'Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.' " State v. Buckman, 190 Wn.2d 51, 59, 409 P.3d 193 (2018) (quoting State v. A.N.J., 168 Wn.2d 91, 117, 225 P.3d 956 (2010)). "A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences." Id. "Counsel's faulty advice can render the defendant's guilty plea involuntary or

unintelligent," but "[t]o establish the plea was involuntary or unintelligent because of counsel's inadequate advice, the defendant must satisfy the two-part . . . test for ineffective assistance claims—first, objectively unreasonable performance, and second, prejudice." State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011).[2] To satisfy the prejudice prong, " 'a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. at 174-75 (quoting In re Pers. Restraint of Riley, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993)).

Here, Miranda has provided his own affidavit and sworn affidavits from Mendoza, Miranda's brother Eric,[3] and Angela Goldtooth, the mother of Miranda's children, attesting to the following: Gibson and Smith told Miranda at their first meeting that the State had "offered a plea deal for sixteen years." Smith told Miranda that he "would receive a third off [his] sentence." Smith "then pulled out a calculator app on his phone and divided 16 by 3 and got 5.333[,] then subtracted 5.333 from 16 and got 10.666[,] essentially ten and a half years." Smith "explained that with time served [Miranda] only had ten years left." After Miranda explained that his oldest child was seven and his youngest was just a few months old, Smith said the plea deal was " 'a no brainer' " and Miranda

---

[2] Counsel need not advise a defendant of all collateral consequences of a guilty plea. In re Pers. Restraint of Quinn, 154 Wn. App. 816, 836, 226 P.3d 208 (2010). However, the State does not dispute that counsel's misinformation about a collateral consequence, such as ERT eligibility, may render a plea invalid "if the defendant materially relied on that misinformation when deciding to plead guilty." In re Pers. Restraint of Reise, 146 Wn. App. 772, 787, 192 P.3d 949 (2008).

[3] Because Miranda and his brother share a last name, we refer to Eric by his first name for clarity.

would "be out of prison in time to see all [his] kids graduate high school."

After Miranda pleaded guilty, he was in a jail cell with Eric and told him he had pleaded guilty and "would receive a third off." Eric told him that was not true. Miranda and Eric called Eric's attorney, who also confirmed that one-third was incorrect. Miranda called Smith and told him what he had heard, and Smith "assured [him] it was a third off." Miranda asked Smith to file a motion to withdraw his plea. Smith told Miranda "not to blow up the deal" and, later, that Miranda's best option "was to go through with sentencing and later try to appeal." Smith also texted Goldtooth on November 22, 2022, the day before Miranda's sentencing, stating that Miranda was "having some last minute jitters" and asking her to call him and "give some words of encouragement." Smith's text continued, "[Miranda] accepted the very favorable offer because he wants to be able to see his kids as kids as a free man. If you were to remind him of the kids it would be very helpful." Also on the eve of sentencing, Mendoza emailed the prosecutor as follows:

> I am writing on behalf of Miguel Miranda. He wants to make it aware to you or anyone to whom it may concern that he doesn't mean to offend anyone but feels that he has not received all the information to go forward with his sentencing. He hopes you understand how important this is to him; that he understands and knows everything needed to take the offer given. His attorney has misadvised him on the time given for good time. He has repeatedly not been given the correct information. Again, he apologizes but is asking for more time to be correctly informed or to be able to seek new [counsel].

Turning back to Miranda's petition, Miranda argues that Smith provided ineffective assistance by (1) misadvising Miranda that he was eligible for one-third off his sentence in ERT, (2) misadvising Miranda that he was *entitled* to

ERT, and (3) advising Miranda against moving to withdraw his plea before sentencing. Miranda also asserts that Gibson provided ineffective assistance by "abdicat[ing] her responsibility to counsel Mr. Miranda and supervise Mr. Smith," whom Miranda claims was unqualified to represent Miranda, and by not assisting Miranda to obtain postconviction relief.

To the extent Smith advised Miranda that he was eligible for or entitled to a one-third reduction in his sentence, that was incorrect. ERT may not exceed 10 percent of a sentence for an offender who, like Miranda, is convicted of murder in the second degree. See RCW 9.94A.729(3)(c) (ERT may not exceed ten percent for an offender convicted of a serious violent offense committed after July 1, 2003); RCW 9.94A.030(46)(a)(iii) (murder in the second degree is a serious violent offense). Moreover, ERT is not guaranteed. See In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 53, 375 P.3d 1031 (2016) ("Correctional agencies are not required to grant the maximum allowable [ERT]."). But even assuming that Smith performed deficiently by misadvising Miranda about his eligibility or entitlement to ERT and that Smith and Gibson were also deficient in the other ways that Miranda alleges, Miranda fails to establish actual and substantial prejudice.

Miranda hinges his claim of prejudice on the assertion that the "lynchpin" for his decision to plead guilty was being able to, as a free man, see *all of his children* graduate from high school. He points out that his oldest child was seven years old when Smith advised him about the plea offer, and he represents that the child would thus graduate in June 2034 at the latest. He also points out that based on a booking date of February 9, 2022, with a 16-year sentence, minus

one-third off his sentence in ERT, he would be released on October 9, 2032, in time for his eldest child's graduation. But based on only ten percent off in ERT, the correct maximum amount under RCW 9.94A.729(3)(c), he would not. He asserts that he placed "extreme value on being present at his children's graduation" and that by pleading guilty based on Smith's incorrect advice, he "gained *the certainty* of attending his children's graduation if he accepted the prosecutor's plea bargain." (Emphasis added.) He asserts further that "[i]t was *only* the advice that [he] could safely plead guilty and still attend his children's high school graduations that persuaded [him] to plead rather than demand trial." (Emphasis added.)

These assertions are belied by the record. Importantly, when a defendant completes a plea statement and admits to reading, understanding, and signing it, there is a strong presumption that his plea was knowing, voluntary, and intelligent. State v. Smith, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). A court's on-the-record inquiry of a defendant who signs a plea agreement further strengthens this presumption. In re Det. of Scott, 150 Wn. App. 414, 427, 208 P.3d 1211 (2009). Here, Miranda signed a plea statement acknowledging that he understood his sentencing range was 154 to 254 months. He also acknowledged he understood that "[t]he judge does not have to follow anyone's recommendation as to sentence." During Miranda's plea colloquy, the trial court specifically asked Miranda, "[D]o you understand the judge does not have to follow the recommendations that the parties might make regarding a sentence," and Miranda answered, "Yes." In other words, Miranda pleaded guilty with

knowledge that the court could sentence him to up to 254 months, rather than the 16 years—or 192 months—the State agreed to recommend.

Critically, a sentence at the high end of the range, 254 months, would not result in Miranda's being released in time to see his oldest child graduate from high school *even if* he received one-third off his sentence in ERT, to which he claims Smith misadvised him he was entitled. At the earliest, Miranda would be released in March 2036, almost two years too late.

Not only did Miranda confirm that he understood the court did not have to follow the parties' recommendation and that the maximum sentence was 254 months, he does not claim that Smith advised him otherwise. Moreover, he points to no evidence that he did not understand a high-end sentence would materially change his release calculus. To the contrary, Miranda claims that the risk of angering the judge and receiving a high-end sentence was the reason Smith advised against moving for a plea withdrawal before sentencing. By pleading guilty, Miranda, whose children were undisputedly a factor in his plea decision, preserved the possibility that if the trial court accepted the parties' joint recommendation (which it ultimately did not), he would be released while his youngest child was still a child—a possibility that convictions for the crimes as originally charged, including the gang aggravator and firearm enhancement on the murder charge, would have foreclosed. Under these circumstances, Miranda's bare assertion that he pleaded guilty only out of certainty that he would be released in time to see *all of his children* graduate is not sufficient to warrant relief. See Buckman, 190 Wn.2d at 69 ("[W]e require something more than a

'bare allegation that a petitioner would not have pleaded guilty' to establish prejudice." (quoting Riley, 122 Wn.2d at 782)). Miranda fails to satisfy his burden of establishing a prima facie showing of prejudice.

Miranda disagrees and argues that at the very least, he is entitled to a reference hearing. "[T]he purpose of a reference hearing is to resolve genuine factual disputes." Rice, 118 Wn.2d at 886. In support of his request, Miranda points out that he has provided evidence corroborating his desire for trial, the availability of a defense theory, his desire to withdraw his plea based on confusion about his how much ERT he would be eligible for, and his desire for assistance to obtain postconviction relief. Cf. In re Pers. Restraint of Burlingame, 3 Wn. App. 2d 600, 611, 416 P.3d 1269 (2018) (in evaluating prejudice, court looks at the contemporaneous evidence that the defendant presents to corroborate his expressed preferences).

However, there is no reason to remand for a reference hearing if "the disputed facts arise only from a self-serving affidavit of the defendant." Reise, 146 Wn. App. at 789. Here, significantly, Miranda has not offered any evidence to corroborate his self-serving claim that despite knowing the trial court could impose a high-end sentence, he believed it was certain he would be released in time to see his oldest child graduate if he accepted the prosecutor's plea offer.[4] And because that is the basis for his prejudice claim, a reference hearing is not

---

[4] Miranda submitted a declaration from defense investigator Howard Hayes, who interviewed Smith in June 2025. The State argues the declaration consists of inadmissible hearsay. But even if we were to consider the declaration, it provides no support for Miranda's claim that, even knowing the court could ignore the recommended sentence, he believed it was certain he would be released in time to see his oldest child graduate. Accordingly, we need not and do not decide whether Hayes's declaration is admissible.

warranted.[5]

II.  Amendment of Judgment & Sentence

Miranda also claims that he is entitled to relief because the trial court amended the judgment and sentence in his absence. He asserts that at sentencing, "everybody signed [the] judgment and sentence[ ] that read[ ] 16 years instead of the . . . 21 the judge imposed" and that "[s]ometime later, without . . . Miranda being notified or present . . . the judgment and sentence was amended to 21 years." The State concedes that "[f]ollowing sentencing, the parties realized that the preprinted judgment and sentence document did not reflect the actual confinement time imposed by the court," and "[w]ith counsel's approval, the trial court hand-marked the judgment and sentence with the correct amount of confinement time." Additionally, on January 12, 2023, at a hearing at which Gibson was present but Miranda was not, the trial court corrected the judgment and sentence to add the mandatory 36-month community custody term, which it had imposed but inadvertently omitted from the original judgment and sentence. See RCW 9.94A.701(1)(b) (three-year community custody term is mandatory for serious violent offenses); RCW 9.94A.030(46)(a)(iii) (murder in the second degree is a serious violent offense).

Miranda does not argue, much less show, that he was prejudiced by being absent in either instance when the trial court updated the judgment merely to reflect the sentence that it actually imposed. Cf. State v. Ramos, 171 Wn.2d 46, 48, 246 P.3d 811 (2011) (defendant has no constitutional right to be present for a

---

[5] We also deny Miranda's "Motion for Reference Hearing," which he filed on December 3, 2025, separately from his personal restraint petition briefing.

purely ministerial hearing). Accordingly, he fails to establish a basis for relief.

CONCLUSION

We deny Miranda's petition.

_Chung, J._

WE CONCUR:

_Feldman, J._     _Smith, J._

13